

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35664-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID WESTON McCRACKEN, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — David McCracken appeals his conviction and sentence for first degree unlawful possession of a firearm and obstruction of a law enforcement officer. We affirm Mr. McCracken's conviction, but remand to strike the jury demand fee, criminal filing fee, and DNA[1] collection fee from Mr. McCracken's judgment and sentence.

---

[1] Deoxyribonucleic acid.

No. 35664-7-III
*State v. McCracken*

FACTS

Mr. McCracken was arrested after he fled from a vehicle that had eluded police. There were initially four people in the suspect vehicle. During the police chase, Officer Michael Robbins saw an individual bail out of the vehicle's rear passenger-side door. Officer Robbins was able to identify the individual as Heliodoro Xhurape. The vehicle chase ended in a snowy field after law enforcement deployed spike strips and forced a stop. Mr. McCracken and two other men then ran from the car. At the time, law enforcement could not discern the identities of the three men.

Officer Robbins and other members of law enforcement ran after the fleeing men. Officer Robbins apprehended one of the men, who was identified as Ernesto Mendez Leon. Mr. McCraken was arrested by a different officer. The officer who arrested Mr. McCracken noticed that the tread on Mr. McCracken's shoes matched a set of footprints next to the suspect vehicle. The fourth individual from the vehicle was observed walking in a nearby area. He was arrested and identified as Dwayne Erickson.

In addition to apprehending Mr. Mendez Leon, Officer Robbins also performed an external visual inspection of the suspect vehicle. Officer Robbins noticed a rifle in the front passenger seat, partially resting on the center console. Officer Robbins obtained a search warrant and seized the rifle, along with drug evidence.

2

The State charged Mr. McCracken with first degree unlawful possession of a firearm, four counts of unlawful possession of a controlled substance, and obstruction of a law enforcement officer.

The State also filed charges against Mr. Mendez Leon. During the pretrial process, Mr. Mendez Leon entered into a plea agreement that obliged him to cooperate with law enforcement. Mr. Mendez Leon began the cooperation process by participating in a recorded police interview. However, Mr. Mendez Leon's plea agreement was subsequently withdrawn after he incurred new criminal charges.

Despite the failed plea agreement, the State included Mr. Mendez Leon on its list of trial witnesses. Mr. Mendez Leon testified at trial, along with several law enforcement witnesses. The law enforcement witnesses testified consistent with the aforementioned statement of facts. Officer Robins specified that he was 100 percent certain that the individual who bailed out of the back seat of the suspect vehicle was Mr. Xhurape.

Mr. Mendez Leon's trial testimony was inconsistent with his prior statements to police. During his pretrial interviews, Mr. Mendez Leon had stated that he was seated behind the driver of the vehicle, Mr. Erickson, during the police chase. According to the pretrial interviews, Mr. McCracken was in the front passenger seat and Mr. Xhurape was in the back passenger-side seat. But during trial, Mr. Mendez Leon reversed the locations

3

of Mr. McCracken and Mr. Xhurape. Mr. Mendez Leon testified Mr. McCracken was in

the back passenger seat and Mr. Xhurape was in front. In addition, Mr. Mendez Leon

stated prior to trial that the rifle located in the suspect vehicle belonged to Mr.

McCracken. But during trial, Mr. Mendez Leon testified that he did not know anything

about a rifle. The State impeached Mr. Mendez Leon's trial testimony with his prior

inconsistent statements. The State presented its impeachment evidence both by asking

Mr. Mendez Leon about the prior statements and by eliciting the prior statements through

Officer Robbins.

Mr. McCracken did not ask for an instruction advising the jury about the limited

evidentiary value of Mr. Mendez Leon's prior inconsistent statements.[2] Instead, Mr.

McCracken sought to question Mr. Mendez Leon about his prior statements by eliciting

information about his cooperation agreement. The trial court denied Mr. McCracken's

request to pose this line of questioning. The court explained that because the plea

agreement had been withdrawn, it had no relevance at trial. Despite the trial court's

ruling, Mr. Mendez Leon volunteered during his testimony that his prior statements were

---

[2] While Mr. McCracken requested that the scope of Mr. Mendez Leon's prior statements be limited, he never requested a limiting instruction explaining the distinction between substantive and impeachment evidence.

made in an effort to curry favor with law enforcement so that he could receive some sort of "offer." 1 Report of Proceedings (RP) (Oct. 6, 2017) at 189.

The jury convicted Mr. McCracken of the firearm and obstruction charges. The four drug charges resulted in acquittals.

At sentencing, the trial court found that Mr. McCracken did not have the financial means to pay the fines and assessments, and ordered him to pay $1,050 in legal financial obligations (LFOs). Relevant to this appeal, the LFOs included a $250 jury demand fee, $200 criminal filing fee, and $100 DNA collection fee. The trial court also entered an order of indigency for purposes of appeal. Mr. McCracken was sentenced to 108 months' incarceration.

Mr. McCracken appeals his judgment and sentence.

## ANALYSIS

*Mr. Mendez Leon's testimony*

Mr. McCracken argues his conviction should be reversed based on two errors pertaining to Mr. Mendez Leon's testimony. We disagree with these contentions and address each in turn.

*Sufficiency challenge*

Mr. McCracken claims that the only evidence placing him in the front passenger

seat of the vehicle came from Mr. Mendez Leon's prior inconsistent statements. Because

prior statements do not constitute substantive evidence of guilt, *State v. Burke*, 163 Wn.2d

204, 219, 181 P.3d 1 (2008), Mr. McCracken argues that the State failed to present

sufficient evidence to support his conviction.[3]

We disagree with Mr. McCracken's assessment of the evidence. Reviewing the

evidence in the light most favorable to the State, *State v. Salinas*, 119 Wn.2d 192, 201,

829 P.2d 1068 (1992), sufficient substantive evidence supports a jury determination that

Mr. McCracken was the front seat passenger of the suspect vehicle.

The uncontroverted trial evidence was that there were four individuals inside the

suspect vehicle. Mr. Mendez Leon testified that he was in the vehicle at the time of the

police chase, seated behind the driver, Mr. Erickson. The inconsistency in Mr. Mendez

Leon's testimony pertained to Mr. McCracken's location. Had Mr. Mendez Leon

provided the State's only testimony regarding the locations of individuals within the

---

[3] Because a request was never made, the lack of a limiting instruction explaining
the distinction between substantive and impeachment evidence is not a basis for relief on
appeal. *State v. Wilcoxon*, 185 Wn. App. 534, 542-43, 341 P.3d 1019 (2015). The issue
of whether the court should have issued a curative instruction, based on the prosecutor's
alleged improper argument, is a separate issue and is addressed below.

suspect vehicle, Mr. McCracken's sufficiency challenge might have some sway in that

the State would have lacked any substantive evidence that Mr. McCracken had occupied

the front passenger seat of the vehicle. But Mr. Mendez Leon was not the only witness

on the issue of Mr. McCracken's physical location. The State also presented Officer

Robbins's testimony that Mr. Xhurape was the person seen fleeing from the back

passenger-side seat of the vehicle. The combination of Officer Robbins's testimony and

Mr. Mendez Leon's unimpeached testimony that Mr. Mendez Leon and Mr. Erickson

were on the driver's side of the vehicle provided the jury with sufficient substantive

evidence that Mr. McCracken must have been the person seated in the front passenger

seat of the vehicle. Mr. McCracken's sufficiency challenge therefore fails.

*Confrontation challenge*

Mr. McCracken argues the trial court violated his constitutional right of

confrontation[4] and evidentiary right of cross-examination by prohibiting questions

pertaining to Mr. Mendez Leon's failed plea agreement with the State. We review

Mr. McCracken's constitutional claim de novo, *State v. Jasper*, 174 Wn.2d 96, 108,

271 P.3d 876 (2012), and his evidentiary challenge for abuse of discretion. *State v.*

*Fisher*, 165 Wn.2d 727, 752, 202 P.3d 937 (2009).

---

[4] U.S. CONST. amend. VI; WASH. CONST., art. I, § 22.

We find no error in the limits placed on Mr. Mendez Leon's cross-examination.

At the time of trial, Mr. Mendez Leon did not hold a plea agreement with the State.

Thus, the document was not relevant to impeaching Mr. Mendez Leon's substantive trial

testimony, which was favorable to the defense. With respect to Mr. Mendez Leon's prior

statements, Mr. Mendez Leon explained that his prior statements were made in hopes

of obtaining favorable treatment by the State. To the extent Mr. McCracken was entitled

to point out that Mr. Mendez Leon's impeachment statements were biased, he did so.

Admission of the plea agreement would not have made an appreciable difference.

*Denial of motion for mistrial*

After the jury was selected, but prior to opening statements, Mr. McCracken made

an oral motion for mistrial. The motion stemmed from the court's preliminary comments

to the jury venire, which included the following recitation of count 1 of the information:

> It is alleged that on or about the date of the 24th day of December, 2016, the
> Defendant having previously been convicted in this State or elsewhere of a
> serious offense as defined under Washington law, to wit—an Assault in the
> 2nd Degree on April 8th, 2002, did knowingly own or have in his
> possession or under his control a firearm, to wit—an ATI GSG-5 .22 caliber
> rifle, contrary to Washington law.

1 RP (Oct. 5, 2017) at 41.

Prior to jury selection, Mr. McCracken had signed a stipulation, agreeing that he

had previously been convicted of a serious offense. The State apparently failed to file the

8

stipulation prior to jury selection. Mr. McCracken's argument in support of his mistrial

motion was that, based on the stipulation, the trial court should not have mentioned the

prejudicial fact of his 2002 second degree assault conviction.

The trial court denied Mr. McCracken's motion. The court reasoned that the jury

had been instructed the information was not evidence. In addition, the court theorized

that it was unlikely any of the jurors would remember the brief mention of the assault

conviction. The court noted that one of the venire members had mentioned something

about an assault during questioning, but that individual had been struck from the jury.

Beyond moving for a mistrial, Mr. McCracken did not request that the court take any

corrective action, addressing the brief mention of his 2002 assault conviction.

In his appeal, Mr. McCracken argues that the trial court should have granted his

motion for mistrial. We review the trial court's ruling for abuse of discretion. *State v.*

*Young*, 129 Wn. App. 468, 473, 119 P.3d 870 (2005). The abuse of discretion standard

is extremely deferential to the trial court. An abuse of discretion will be found only

when "'no reasonable judge would have reached the same conclusion.'" *State v.*

*Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989) (quoting *Sofie v. Fibreboard Corp.*,

112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989).

9

When a mistrial motion is based on the jury's exposure to improper information, our focus is prejudice. We will overturn the trial court's denial of a mistrial motion "only when there is a 'substantial likelihood' [prejudicial information] affected the jury's verdict." *Young*, 129 Wn. App. at 472-73 (some internal quotation marks omitted) (quoting *State v. Greiff*, 141 Wn.2d 910, 921, 10 P.3d 390 (2000)). Three factors are relevant to the assessment of prejudice: (1) the seriousness of the irregularity that led to the jury's exposure to improper information, (2) whether the improper information was cumulative, and (3) whether the trial court properly instructed the jury to disregard the improper evidence. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012).

Going to the first factor of our analysis, the irregularity at issue here was significant, but not overly serious. The trial court's reference to the 2002 assault was brief and included no details that might evoke an emotional response. In addition, the assault conviction was old and dissimilar to the crimes on trial. The court's reference to the assault conviction occurred only once, at the beginning of the proceedings, prior to opening statements and the presentation of evidence. While Mr. McCracken's offer to stipulate should have precluded the trial court from mentioning the assault conviction, the error was not so grave that it eliminated Mr. McCracken's chances at a fair trial.

With respect to the second factor, the trial court's reference to Mr. McCracken's prior conviction was not cumulative of other evidence. However, Mr. McCracken did stipulate that he had previously been convicted of a serious offense and the jury was informed of this stipulation. Given the age of Mr. McCracken's conviction and the dissimilarity between it and the crimes on trial, brief reference to the name of Mr. McCracken's offense of conviction was not significantly more prejudicial than the facts conveyed through Mr. McCracken's stipulation.

Finally, while the trial court did not issue a specific curative instruction, the court did issue a general instruction, advising the jury that the contents of the information are not to be considered as proof of the crimes charged. Mr. McCracken did not ask for any further instructions. Doing so would have merely emphasized the nature of the prior conviction to the jury. *State v. Garcia*, 177 Wn. App. 769, 783, 313 P.3d 422 (2013). Given the limited nature of the error in this case, it appears that the trial court did as much as was possible to offset any harm caused by the brief mention of Mr. McCracken's 2002 assault conviction.

Applying the relevant law to the record at hand, the trial court did not abuse its considerable discretion in denying Mr. McCracken's mistrial motion. The reason a defendant is entitled to exclude the nature of a prior conviction through stipulation is to

prevent the jury from misusing the prior conviction information as character evidence. *Old Chief v. United States*, 519 U.S. 172, 180-81, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). Here, there is no indication of misuse. The jury acquitted Mr. McCracken of four out of six charges, thus indicating that they were concerned with the State's proof, not with punishing Mr. McCracken for prior bad acts. The trial court appears to have accurately sensed the jury's disposition and exercised appropriate discretion in denying Mr. McCracken's motion for mistrial. While the trial court could have granted Mr. McCracken's motion, it was not required to do so. Relief on appeal is unwarranted.

*Prosecutorial misconduct*

Mr. McCracken argues the prosecutor committed three types of misconduct during summation. The defendant bears the burden of showing that the prosecutor's comments were both improper and prejudicial. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). When it comes to allegations of prosecutorial misconduct, error preservation is important. We will not review unpreserved allegations of prosecutorial misconduct during summation if the errors could have been addressed by an objection and curative instruction. *Emery*, 174 Wn.2d at 762. We address each of Mr. McCracken's misconduct allegations in turn.

*Arguing impeachment evidence as substantive evidence*

Mr. McCracken claims the State improperly argued Mr. Mendez-Leon's prior

inconsistent statements as substantive evidence of guilt by stating as follows:

[Mr. Mendez Leon] gave three statements that you guys basically heard or heard parts of. . . . Now, what's interesting is the consistent parts of his three statements are all the parts that don't put Mr. McCracken in trouble. The inconsistent parts today are the parts that are helping Mr. McCracken.
   The evidence from all the statements consistently what he said on the stand was that Mr. McCracken was in the car. First, actually, he said when I got picked up, no, he wasn't there. Then all of a sudden when the chase starts, all of a sudden he's there. He put him in the backseat, which we know can't be correct because we know that's where Mr. Xhurape was sitting. He said today—I never saw a gun. Well, then all of a sudden he's talking about the gun to the officer. He told the officer on two different occasions Mr. McCracken was in the front seat and the gun was with him. It was Mr. McCracken's gun. Today, I don't—I don't know anything about it.
   He also said today that he was never asked to take responsibility for the gun or anything like that. That's not what he told the officer. And something that is sort of neutral, that Mr. Mendez Leon thinks won't necessarily get Mr. McCracken in trouble, those are all consistent statements. But anything that's going to make Mr. McCracken get in trouble or any of the charges that we're talking about, all of a sudden we have a different story. So, take that into consideration when you are thinking about his testimony. What can you believe and what can you not believe? I'm not saying that everything he said on the stand is true or isn't true or whatever. That's not for me to say. All I'm saying is take that into consideration. You can believe some of what he says and not believe other parts he said.
. . . .
You, as a jury, cannot find Mr. McCracken guilty based only on [Mr. Mendez Leon's] testimony—or should not. You need to read the instruction. But that's not what you have. You have, basically, Mr.

13

> Mendez Leon supplementing what is some pretty significant and overwhelming evidence. So, you're not—you know, you can use parts, you can disregard parts, that's up to you as a jury to figure out how you want to put any sort of weight on his testimony.

1 RP (Oct. 6, 2017) at 244-46.

After listening to this line of argument, Mr. McCracken requested a curative instruction on the basis that the prosecutor had misrepresented Mr. Mendez Leon's prior statements as substantive evidence. The trial court denied this request.

We find nothing improper with the prosecutor's argument. The prosecutor merely pointed out that the main thing to be discerned from Mr. Mendez Leon's testimony was that Mr. McCracken had been inside the vehicle at the time of the police chase. The prosecutor argued that the rest of Mr. Mendez Leon's testimony was not credible because it was inconsistent with prior statements and the inconsistencies were tailored in a way suggestive of bias. The prosecutor appropriately recognized that the jury could not convict Mr. McCracken solely on Mr. Mendez Leon's testimony. Instead, the jury was required to look to the totality of the State's evidence.

Because the prosecutor did not misrepresent the legal significance of Mr. Mendez Leon's testimony, no curative instruction was warranted.

*Evidence outside the record*

Mr. McCracken argues the prosecutor improperly referred to evidence outside

the record when he stated during closing argument that Mr. Mendez Leon winked at

Mr. McCracken prior to taking the witness stand. We disagree with this assessment.

The alleged wink occurred in open court, in full view of the jury, and was relevant

to Mr. Mendez Leon's credibility. The prosecutor was not required to make a record

of Mr. Mendez Leon's wink at the time it happened in order to make a credibility

argument during summation. If Mr. McCracken disagreed that a wink occurred, he

could have objected and requested a curative instruction. He also could have taken

issue with the prosecutor's statements during his closing statement. Indeed, had the

prosecutor misrepresented something that happened in open court, it would have been

strong fodder for a defense argument. But the fact that no responsive action was taken

suggests that the wink did occur and that it was readily apparent to everyone in the

courtroom. Mr. McCracken's tardiness complaint regarding the prosecutor's reference

to the wink is not a basis for relief on appeal.

*Argument regarding constructive possession*

Mr. McCracken contends the prosecutor misstated the law by suggesting that

proximity can be sufficient proof of constructive possession. The following is a recitation

of the pertinent portions of the State's argument:

> Now, you've got actual possession—which means it's in his lap, he's holding onto it, it's right, it's here.  Now, a lot of the evidence actually supports that.
> . . . .
> But there's also what's called constructive possession, which means even if he's not the only one holding onto it—even if he's not the one whose got it in his lap, he still can be in possession or control of it.  And we see here that dominion and control doesn't need to be exclusive.  Not only, you know, one person can have control or possession of this firearm, more than one person can.  The driver probably did too if it's sitting in the center console.  Because one of the main factors to consider is whether or not the Defendant had the ability to, basically, take actual possession.
> Now, if that's sitting in the center console, if it's basically anywhere in that area, everybody basically had access to that gun.  Everybody had the ability to grab it.  It's a small vehicle.  I mean, it's—it's a big gun, it's a small car.  Everybody in the vehicle, basically, had constructive possession of it.  But we also know that Mr. McCracken was in this front seat, so he had the ability—even if it wasn't in his hands, even if it was sitting in the center console—frankly, even if he actually was in the backseat, which is not what the evidence suggests—even if he was in the back seat, that firearm is somewhere in here, that's it.  Easily able to grab and take possession of that firearm, that is constructive possession.

*Id*. at 237-38.  Mr. McCracken voiced no objection to this line of analysis.

The prosecutor's argument did not contain any clear misstatement of law.

Although the prosecutor focused his constructive possession argument on the idea of

access to the firearm, the prosecutor did not contradict or misstate the court's jury

instructions, which contained the full definition of constructive possession.  To the extent

Mr. McCracken was concerned that the jury may have misunderstood the prosecutor's

16

argument, he could have objected and requested a curative instruction. The failure to do so precludes relief on appeal.

*Cumulative error*

Mr. McCracken argues for relief from conviction based on a theory of cumulative error. Because we do not find multiple errors, reversal is unwarranted.

*LFOs*

Based on recent changes to Washington's LFO statutes, Mr. McCracken requests we strike the $200 criminal filing fee, $200 jury demand fee, and $100 DNA collection fee from his judgment and sentence. The State takes no position on this request.

We grant Mr. McCracken his requested relief. At the time of sentencing, Mr. McCracken was indigent as defined by RCW 10.101.010(3)(a)-(c). In addition, Mr. McCracken's criminal history indicates he has already paid a $100 DNA fee. Given these circumstances, Mr. McCracken is protected from imposition of court costs, filing fees, and an additional DNA fee. RCW 10.01.160(3); RCW 36.18.020(2)(h); RCW 43.43.7541; *see State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The aforementioned fees and costs shall be struck from Mr. McCracken's judgment and sentence.

No. 35664-7-III
*State v. McCracken*

CONCLUSION

Mr. McCracken's convictions are affirmed. We remand with instructions to strike the jury demand fee, criminal filing fee, and DNA collection fee from the judgment and sentence. Mr. McCracken's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

Lawrence-Berrey, C.J.

No. 35664-7-III

FEARING, J. (dissenting) — I agree with the majority that the State presented sufficient evidence to convict David McCracken of the charge of unlawful possession of a firearm. Although I disagree with the majority that the jury could consider impeachment evidence in order to find guilt, the State presented other untainted, although weak, circumstantial evidence on which a rational finder of fact could find guilt. Nevertheless, because of cumulative error, including evidentiary error, instructional error, and impermissible prosecutorial argument during closing, I dissent and would grant McCracken a new trial.

FACTS AND PROCEDURE

The State called an uncooperative witness, Ernesto Mendez Leon, to testify during trial. Mendez Leon had ridden in the four-door car, also occupied by David McCracken, Heliodoro Xhurape, and Dwayne Erickson, at the time of the police chase on Christmas Eve 2016. According to law enforcement, Mendez Leon informed officers, immediately on his capture in the snowy field on December 24, that McCracken sat in the front seat of

the sedan during the chase and that an ATI GSG-5 .22 caliber rifle found resting on the

car's center console and front passenger seat belonged to McCracken. The .22 caliber

rifle became the subject of the unlawful possession of a firearm charge.

Law enforcement never examined the rifle for fingerprints. Law enforcement

examined McCracken's shoe prints and discovered that the prints led to the driver's side

of the vehicle, not the front passenger side of the car. Both parties agree that Dwayne

Erickson drove the car. One law enforcement officer saw Heliodoro Xhurape bail from

the passenger side rear door while the sedan detoured in an orchard. Based on this

evidence, either David McCracken or Ernesto Mendez Leon sat in the shotgun seat and

the other in the rear driver's side seat. Sitting in the front seat implicated the passenger

more in possessing the rifle than sitting in the back seat. Both Mendez Leon and

McCracken incurred earlier serious crime convictions. Therefore, Mendez Leon held

strong motivation to place McCracken, rather than himself, in the front seat.

The State of Washington charged Ernesto Mendez Leon, in addition to David

McCracken, with unlawful possession of a firearm. On March 21, 2017, as part of a plea

agreement, Ernesto Mendez Leon submitted to a recorded interview with Brewster Police

Officer Michael Robbins. Under the plea agreement, the State agreed to dismiss charges

against Mendez Leon for unlawful possession of a firearm in exchange for Mendez

Leon's truthful testimony. During the March 21 interview, Mendez Leon stated that

David McCracken sat in the front passenger seat during the chase and McCracken owned

2

the rifle. Mendez Leon thereby fulfilled the plea agreement. Thereafter, however, the State revoked its promise to dismiss charges because Mendez Leon committed a new crime.

At the beginning of trial against David McCracken and in anticipation of Ernesto Mendez Leon testifying contrary to his statement in the field on December 24 and contrary to his recorded interview with Officer Michael Robbins on March 21, the State asked the trial court about the method by which the court wished the State to impeach Mendez Leon by his earlier inconsistent statements. The trial court directed the State to ask Mendez Leon if he earlier told officers a different story before the State presented testimony of an officer or played the recorded statement as impeachment. The trial court then commented: "They have [the jury has] to determine the truth and voracity [sic] of either statement and/or the Defendant's testimony." Report of Proceedings (RP) (Oct. 6, 2017) at 156

Immediately before the trial testimony of Ernesto Mendez Leon, defense counsel sought to admit, as an exhibit, Mendez Leon's statement on plea of guilty signed pursuant to the plea agreement. Counsel explained that he did not seek to introduce the statement to impeach the witness with a conviction but to show that, when Mendez Leon provided his recorded statement on March 21, he expected the State to dismiss the charge of unlawful possession of a firearm against him. According to counsel, the State thereby gave Mendez Leon consideration for his testimony, and Mendez Leon held a motive to

3

prevaricate and blame someone else. According to defense counsel, the State's later

revocation of the plea agreement mattered none because Ernesto Mendez Leon never

anticipated a revocation at the time of the recorded statement. Mendez Leon's motive to

fabricate on March 21, not his motive to prevaricate during trial, controlled admissibility

of the evidence.

In response, the State proclaimed that the plea agreement was no longer in effect

because of a later charge against Ernesto Mendez Leon for assault. Thus, according to

the State, the plea agreement lacked relevance. The State emphasized that it planned to

play the March 21 recorded statement only if Mendez Leon testified contrary to the

statement. The State represented that the recorded statement would not become

substantive evidence of David McCracken's guilt of possession of the firearm. The State

further argued that the defense cannot impeach testimony supplied to the jury for

impeachment purposes only. The earlier statements' contradictory nature to the trial

testimony, not the truth of the recorded statement, bore relevance.

Defense counsel noted the reality that, despite the State's protest to the contrary,

the jury would consider the recorded statement as evidence of guilt. The recording would

be used for a dual purpose. Counsel commented: "If the jury hears [the recorded

statement] they have to make a decision whether they believe that to be the truth or not."

RP (Oct. 6, 2017) at 173. The trial court interjected during counsels' ongoing debate

with a statement implying the court deemed an earlier inconsistent statement to be

4

substantive evidence: "Again, that's again within the purview of the jury to decide

which—what statement they're going to believe." RP (Oct. 6, 2017) at 175.

The State's attorney commented that defense counsel, and indirectly the trial

court, incorrectly thought that the jury would decide which statement, either the recorded

statement on March 21 or the testimony at trial, constituted the truth. The State insisted

that the jury could not use the recorded statement or any other prior inconsistent

statement for substantive purposes. Nevertheless, the State never proposed a limiting

instruction.

The trial court ruled to exclude any questioning by defense counsel of the plea

agreement entered by Ernesto Mendez Leon with the State, by which Mendez Leon

delivered his March 21 recorded statement. The trial court did not adopt the State's

theory for excluding the evidence. The trial court instead reasoned that one's motive for

rendering a statement was "speculative." RP (Oct. 6, 2017) at 180. The trial court added:

> The statements themselves, I assume both parties are going to
> present their respective statements and I think it's within the purview of the
> jury to discern the inconsistencies and decide from the statements
> themselves who they're going to believe or what they're going to believe
> the facts to be. They're the trier of facts and so, all we're talking about,
> whatever facts this Witness says, they'll discern that. And they can then—
> each party can examine and/or cross examine and/or impeach as they see
> fit. Basically, from the Court's perspective, that's what the—that's what a
> certain trial is about—for the jury to perceive all of that.

RP (Oct. 6, 2017) at 181. Presumably, the trial court's ruling in limine, contrary to the

court's remarks, did not allow the defense to cross-examine as it sees fit. The trial court

also denied admission of the statement on plea because of a lack of a certified copy of the statement.

Ernesto Mendez Leon testified at trial, contrary to his earlier statement to law enforcement, that David McCracken sat in the back passenger side seat of the sedan. Mendez Leon did not know of any gun's presence inside the car. Mendez Leon averred that he may have spoken with Officer Michael Robbins on the night of December 24. At trial, he did not remember telling Officer Robbins on December 24 that McCracken sat in the front seat. Mendez Leon recalled telling officers that night the gun belonged to McCracken, because the officers insisted a gun was present in the car and Mendez Leon did not wish law enforcement to blame him for the gun. Mendez Leon testified that he agreed with whatever facts the insistent officers related to him. Mendez Leon was high on heroin and methamphetamine that Christmas Eve.

During trial, Ernesto Mendez Leon further testified that he furnished a recorded statement to Officer Michael Robbins on March 21, 2017. During trial, Mendez Leon did not remember stating, during the interview, that David McCracken sat in the front seat. The following colloquy occurred between the prosecuting attorney and Mendez Leon:

> Q In the same interview that we're talking about, you also said that the gun belonged to Mr. McCracken, correct?
> A Yeah, but the reason I said it was because I felt kind of pressured, you know, like—they're giving me an offer.
> Q So, hey, no, no. So, I'm going to stop you there. Yes or no?
> A Hmm?
> Q Yes or no?

6

A I can't remember.
Q You can't remember?
A No.

RP (Oct. 6, 2017) at 189.

Later the State played portions of the March 21 recording for the jury. Before playing of the recording, defense counsel requested that the trial court permit the State to play only those portions of the interview that contained statements inconsistent with Ernesto Mendez Leon's trial testimony. The trial court denied the request.

When discussing with counsel a proposed jury instruction precluding the jury from convicting David McCracken based only on an accomplice's testimony, the trial court commented about the evidence implicating McCracken as sitting in the front passenger seat:

> THE COURT: Well, from my perspective, I guess, I'm going to give the instruction only because I think his [Ernesto Mendez Leon's] testimony places the Defendant in the passenger seat, and as such. I don't think there's any other testimony other than this Witness that places Mr. McCracken in the passenger as well as Mr. Erickson as driving, as such.

RP (Oct. 6, 2017) at 208. The trial court delivered jury instruction 21, which read:

> Testimony of an accomplice, given on behalf of the State, should be subjected to careful examination in light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth.

Clerk's Papers (CP) at 79.

7

The trial court instructed the jury on constructive possession of a firearm for purposes of convicting one of unlawful possession of a firearm. Jury instruction 8 read:

> Possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.
>
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the ability to take actual possession of the item, whether the defendant had the capacity to exclude others from possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

CP at 66.

During closing statement, the prosecuting attorney commented:

> *We know [David McCracken] was in the vehicle so that he knowingly possessed the firearm. . . . And we know that Mr. Erickson was driving. Mr. Mendez Leon was very clear in all of his statements, but here today, that he was behind the driver.* We know that Mr. Xhurape jumped out of the back passenger seat. That leaves one individual left to be in that front passenger seat—that's Mr. McCracken.
>
> Now, we also have a photograph of exactly where that gun was when law enforcement came up to the car. So, this being the driver seat, that's the passenger seat. That's exactly where Mr. McCracken was sitting. So, he had actual possession of that firearm.

RP (Oct. 6, 2017) at 238 (emphasis added). The State's attorney added:

> Did he own—well, first—and again, *this is depending on how much weight you want to give Mr. Mendez Leon's testimony. Today he testified*

8

> *he didn't know who the owner was, inconsistent with prior statements.*
> Ownership aside, it's possession or control.

RP (Oct. 6, 2017) at 239 (emphasis added).

The State's attorney commented extensively concerning the testimony of Ernesto

Mendez Leon and his prior recorded statement:

> So, the last thing I want to talk about is on credibility—frankly, of
> Mr. Mendez Leon. Now, he gave three statements that you guys basically
> heard or heard parts of. Now, what's interesting is—and I don't know if all
> of you saw it—this is sort of up to you in your discussions. *But when he sat
> down on the stand, he winked at Mr. McCracken.* Now, what's interesting
> is the consistent parts of his three statements are all the parts that don't put
> Mr. McCracken in trouble. The inconsistent parts today are the parts that
> are helping Mr. McCracken.
> . . . .
> . . . He [Ernesto Mendez Leon] put him [David McCracken] in the
> backseat, which we know can't be correct because we know that's where
> Mr. Xhurape was sitting. He [Mendez Leon] said today—I never saw a
> gun. Well, then all of a sudden he's talking about the gun to the officer.
> *He told the officer on two different occasions Mr. McCracken was in the
> front seat and the gun was with him. It was Mr. McCracken's gun. Today,
> I don't—I don't know anything about it.*
> *He also said today that he was never asked to take responsibility for
> the gun or anything like that. That's not what he told the officer.* And
> something that is sort of neutral, that Mr. Mendez Leon thinks won't
> necessarily get Mr. McCracken in trouble, those are all consistent
> statements. *But anything that's going to make Mr. McCracken get in
> trouble or any of the charges that we're talking about, all of a sudden we
> have a different story. So, take that into consideration when you are
> thinking about his testimony. What can you believe and what can you not
> believe?* I'm not saying that everything he said on the stand is true or isn't
> true or whatever. That's not for me to say. All I'm saying is take that into
> consideration. You can believe some of what he says and not believe other
> parts he said.
> . . . .

9

> *. . .* You, as a jury, cannot find Mr. McCracken guilty based only on his testimony—or should not. You need to read the instruction. But that's not what you have. *You have, basically, Mr. Mendez Leon supplementing what is some pretty significant and overwhelming evidence. So, you're not—you know, you can use parts, you can disregard parts, that's up to you as a jury to figure out how you want to put any sort of weight on his testimony.*

RP (Oct. 6, 2017) at 244-46 (emphasis added). The trial record does not confirm the alleged wink. Finally, the prosecuting attorney commented with regard to constructive possession of the firearm:

> Now, if that's sitting in the center console, if it's basically anywhere in that area, everybody basically had access to that gun. Everybody had the ability to grab it. It's a small vehicle. I mean, it's—it's a big gun, it's a small car. Everybody in the vehicle, basically, had constructive possession of it. But we also know that Mr. McCracken was in this front seat, so he had the ability—even if it wasn't in his hands, even if it was sitting in the center console— frankly, even if he actually was in the backseat, which is not what the evidence suggests—even if he was in the backseat, that firearm is somewhere in here, that's it. Easily able to grab and take possession of that firearm, that is constructive possession.

RP (Oct. 6, 2017) at 238.

After the conclusion of the State's summation, David McCracken's counsel asked the court for a curative instruction with respect to any evidence of McCracken sitting in the front seat of the sedan. Counsel maintained:

> My motion is to have the Court issue a curative instruction with respect to the evidence of the Defendant being in the front seat. The only direct evidence and substantive evidence from Mr. Mendez Leon was that the Defendant was in the backseat. Yet, Counsel argues in closing when he

10

previously indicated to me that he wouldn't argue the substance of the prior inconsistent statements, that's exactly what he did. And if I would have—

RP (Oct. 6, 2017) at 247. The trial court interrupted:

It is—the statement is the statement. That is—he played the statement.

RP (Oct. 6, 2017) at 247. The State's attorney insisted that he only used the recorded interview as an inconsistent statement for purposes of impeachment and not as substantive evidence. The trial court initially expressed agreement with the State's attorney:

[STATE'S ATTORNEY]: And I argued in closing—I argued it as an inconsistent statement. My focus was on the inconsistency and how that affects Mr. Mendez Leon's credibility, not for the substance of it.
THE COURT: That's the way I heard his argument.

RP (Oct. 6, 2017) at 248. After a remark from David McCracken about the trial court always favoring the State, the trial court apparently disagreed with the State about the recording not being presented as substantive evidence, or the court commented that, even assuming the State sought the evidence for impeachment purposes only, the jury could weigh the evidence as if substantive evidence. The court remarked:

THE COURT: Further, the tape was played at 9:23. Mr. Mendez stated where he was sitting. Mr. Erickson was the driver, Mr. McCracken was in the passenger seat. Me, I was behind the driver—referring to himself. Helio [Xhurape] was behind the passenger. It's clearly in the statement played at 9:23 on March 21st, 2017. That's clear testimony presented.
[Defense counsel]: For impeachment purposes only.
THE COURT: So? It's evidence, okay?

11

> [Defense counsel]: Okay.  So, I'm just asking for—
> THE COURT: And that's what we talked about—inconsistency.
> And so, it's before the jury.  The jury weighs that out.

RP (Oct. 6, 2017) at 249.  The trial court denied McCracken's motion for an instruction

limiting the jury from employing McCracken's recorded statement as substantive

evidence.

> During rebuttal summation, the State's attorney intoned:

> Everybody in that car, based on where the gun was, had access to the gun, had the ability to take actual possession of that gun.  *Even if you discount all of Mr. Mendez Leon's testimony, there's still enough evidence to fit.*  Mr. Mendez Leon just adds (indiscernible).  Now, Mr. Mendez's statements were very inconsistent where it would hurt or help Mr. McCracken, but that's for you to decide and to weigh and conclude.  When somebody gets on the stand and *winks* at the Defendant and then all of a sudden his story changes and two prior statements were consistent with each other, but inconsistent with today's statement, that's something for you to consider.

RP (Oct. 6, 2017) at 262 (emphasis added).

### Cross-Examination of David McCracken

I agree with David McCracken that the trial court erroneously precluded him from

asking Ernesto Mendez Leon about the plea agreement that led to his March 21 recorded

interview.  I note that the trial court issued its ruling of preclusion in the context of

admitting as an exhibit Mendez Leon's statement on plea of guilty, not in terms of asking

Mendez Leon about the plea agreement.  Nevertheless, the trial court based its ruling on

the trial court's understanding that the motive behind one's statements is always

12

speculative and therefore inadmissible. Thus, the ruling would extend to testimony from

Mendez Leon about the plea agreement in addition to entering as an exhibit the

agreement or a statement pursuant to the agreement. The State deemed the ruling to

extend to such testimony because the prosecuting attorney stopped Mendez Leon from

testifying about his hope for withdrawal of the charges. In this appeal, the State does not

contend David McCracken cannot assign error to testimony about the plea agreement

because the trial court's ruling only extended to admission of the plea statement.

The Sixth Amendment to the United States Constitution guarantees the right of an

accused in a criminal prosecution "to be confronted with the witnesses against him." The

Washington Constitution affords the same right. Const. art. I, sec. 22.

The right to confrontation includes the right to cross-examination. *Davis v.

Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). Cross-examination

is the principal means to test the believability of a witness and the truth of his testimony.

*Davis v. Alaska*, 415 U.S. at 316. The exposure of a witness' motivation in testifying is a

proper and important function of the constitutionally protected right of cross-

examination. *Davis v. Alaska*, 415 U.S. at 316-17.

A defendant may impeach a witness on cross-examination by referencing any

agreements or promises made by the State in exchange for the witness' testimony. *State

v. Ish*, 170 Wn.2d 189, 198, 241 P.3d 389 (2010). Evidence of plea agreements allows

the jury to be privy to any possible bias a witness may have in testifying against a

13

defendant. *State v. Farnsworth*, 185 Wn.2d 768, 781-82, 374 P.3d 1152 (2016); *State v. Jessup*, 31 Wn. App. 304, 316, 641 P.2d 1185 (1982). The right of cross-examination guarantees an opportunity to show specific reasons why a witness testifying pursuant to a plea bargain might be biased in a particular case. *State v. Portnoy*, 43 Wn. App. 455, 461, 718 P.2d 805 (1986). Great latitude must be allowed in cross-examining a key prosecution witness, particularly an accomplice turned State's witness, to show motive for his testimony. *State v. Farnsworth*, 185 Wn.2d at 781-82.

Ernesto Mendez Leon originally agreed to record a statement in exchange for dismissal of the charge of unlawful possession of a firearm. When he delivered the statement, he possessed a motive to prevaricate as to who owned the rifle and where he sat in the sedan. Nevertheless, the trial court denied cross-examination regarding this crucial fact during trial.

The State argues that the plea agreement lacked relevance because later conduct of Ernesto Mendez Leon vitiated the agreement. The State emphasizes that the plea agreement was no longer in effect at the time of trial. Nevertheless, what occurred after the agreement lacks materiality. The critical date is the date of the recorded statement and the motivation of Ernesto Mendez Leon at the time of the statement. At the time he submitted to the interview, Mendez Leon believed charges of unlawful possession of a firearm would be withdrawn. The later vitiation of the plea agreement and Mendez

14

Leon's motivations at the time of trial would control only if David McCracken sought to impeach Mendez Leon's trial testimony, not earlier statements.

The trial court deemed adjudging Ernesto Mendez Leon's motivations in submitting to the March 21 recorded statement as speculative. The logical extension of the trial court's reasoning would be to deny any impeachment of a witness for bias, let alone denying any testimony of a witness about any agreement with the State to cooperate in order to avoid charges. The jury, not the trial court, decides the significance of the plea agreement's impact on witness' statement to the police.

The trial court also based exclusion of testimony about the plea agreement on the fact that David McCracken failed to present a certified copy of the plea agreement. Nevertheless, entering a copy of the agreement as an exhibit did not necessarily preclude testimony that Ernesto Mendez Leon engaged in an interview at a time that he believed the State would withhold charges against him. A defendant may impeach a witness by referencing the agreement without the written agreement being admitted as an exhibit. *State v. Ish*, 170 Wn.2d at 198-99 (2010).

Anyway, the State never challenged the authenticity of or the contents of the agreement or, more importantly, the statement pursuant to the agreement. Therefore, a certified copy was not needed. A certified copy is simply a means of self-authenticating a public record. ER 902(d). A party to an agreement or a party who signed a document

15

may authenticate the agreement or document, without the presence of a certified copy, since the party can verify the accuracy of the writing. ER 901(b)(1).

The State argues that Ernesto Mendez Leon's implication of David McCracken during the March 21 recorded interview lacks importance since Mendez Leon also implicated McCracken when Mendez Leon spoke to law enforcement on December 24. Assuming the State's position to be true, the State could have withheld playing the recording to the jury and relied solely on the December 24 comments. More importantly, the jury could have deemed the recorded interview more persuasive because the recording prevented any questioning about the content of Mendez Leon's statements. The jury heard the recorded statement verbatim. Also, evidence of the plea agreement could emphasize to the jury that any and all of Mendez Leon's comments to law enforcement, including the December 24 hoary field statement, would be motivated by a desire to avoid prosecution and blame someone else for any crimes. Finally, no rule of evidence precludes questioning a witness as to his or her motivation to talk to police on one occasion, despite the witness talking to law enforcement on another occasion.

Finally, the State argues that the motivation for Ernesto Mendez Leon to speak with law enforcement on March 21 lacks relevance because the State played the recording only to impeach Mendez Leon's testimony at trial and not for substantive purposes. Therefore, according to the State, the truthfulness of the March 21 comments are not at issue. Only the remarks' inconsistency with trial testimony holds importance.

16

The State's argument holds cogency, although it cites no legal authority to support the proposition that one cannot impeach testimony submitted for impeachment purposes only. Nevertheless, as analyzed later, the State employed the March 21 recording for substantive purposes.

Barring an inquiry into a witness agreement with the prosecution violates the accused's rights under the confrontation clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 676, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Exclusion of a plea agreement is reversible error if the error prejudiced the defendant, such that if the error had not occurred, the outcome of the trial would have been materially affected. *State v. Farnsworth*, 185 Wn.2d at 784.

Ernesto Mendez Leon's March 21 recorded statement provided the State crucial evidence of guilt of David McCracken. Ernesto Mendez Leon was the only witness who, by his earlier statements, directly testified that McCracken sat in the front seat of the sedan. The trial court acknowledged the criticality of Mendez Leon's testimony in placing McCracken in the front seat. Other evidence suggested McCracken sat in the back seat. McCracken's shoe prints led to the driver's side of the car. All parties agreed that Dwayne Erickson drove the car, so the shoeprints placed McCracken in the driver's side back seat. For these reasons, the preclusion of confronting Mendez Leon with possible bias at the time of the recording caused McCracken prejudice.

17

If exclusion of testimony of the plea agreement was the only trial error, I might not afford David McCracken a new trial. Ernesto Mendez Leon volunteered nonresponsibly and nonresponsively to a question that "the reason I said it [the gun belonged to McCracken] was because I felt kind of pressured . . . —they're giving me an offer." RP (Oct. 6, 2017) at 189. Although the State's attorney quickly ended Mendez Leon's answer, the State did not seek to strike the testimony. One could conclude that the jury heard the testimony of bias desired by McCracken.

Still, the exclusion of testimony of the plea agreement impacted the trial. The jury needs to have full information about the witness's plea in order to intelligently evaluate his testimony. *State v. Farnsworth*, 185 Wn.2d at 795 (2016) (Gordon McCloud, J., dissenting in part). Great latitude must be allowed in cross-examining a key prosecution witness, particularly an accomplice who has turned State's witness, to show motive for his testimony. *State v. Farnsworth*, 185 Wn.2d at 795. Defense counsel should have been able to cross-examine Ernesto Mendez Leon at length concerning the plea agreement. The jury should have heard evidence of the agreement in a manner other than Mendez Leon being summarily silenced. More importantly, defense counsel should have been able to refer to the plea agreement during summation.

Mendez Leon's Earlier Statements as Substantive Evidence

More troublesome errors occurred at trial that accumulated to render David McCracken's trial unfair and prejudicial. For one, the State parlayed, with the permission

18

of the trial court, the prior statements of Ernesto Mendez Leon into substantive evidence

of guilt, despite representing it introduced the evidence only to impeach Mendez Leon.

One wonders why the State did not join David McCracken in seeking an instruction

limiting the jury to considering the earlier statements only for impeachment purposes if

impeachment was the sole motivation. The jury was never told to employ the earlier

statements only to counter Mendez Leon's trial testimony and so the jury would

automatically use the evidence to convict McCracken. The trial court repeatedly

considered the impeaching statements as substantive evidence.

The State argues that, during summations, it mentioned Ernesto Mendez Leon's

earlier inconsistent statements only in the context of the jury weighing Mendez Leon's

credibility. During closing statement, the prosecuting attorney commented:

> [W]e know that [David McCracken] was in the vehicle so that he knowingly possessed the firearm. And we know that Mr. Erickson was driving. Mr. Mendez Leon was very clear in all of his statements, but here today, that he was behind the driver. . . . That leaves one individual left to be in that front passenger seat—that's Mr. McCracken.

RP (Oct. 6, 2017) at 237. In this passage, the State employed Ernesto Mendez Leon's

statements to police to show McCracken's proximity to the rifle by being seated in the

front seat. The prosecutor never told the jury to limit these statements to determining the

credibility of Mendez Leon. As noted by the trial court, no other direct evidence placed

McCracken in the front seat.

The State's attorney added later during closing statement:

19

> Did he own—well, first—and again, this is depending on how much weight you want to give Mr. Mendez Leon's testimony. Today he testified he didn't know who the owner [of the firearm] was, inconsistent with prior statements. Ownership aside, it's possession or control.

RP (Oct. 6, 2017) at 239. State's counsel never told the jury not to employ the prior inconsistent statements to find McCracken guilty.

The State's attorney emphasized to the jury:

> You have, basically, Mr. Mendez Leon supplementing what is some pretty significant and overwhelming evidence. So, you're not—you know, you can use parts, you can disregard parts, that's up to you as a jury to figure out how you want to put any sort of weight on his testimony.

RP (Oct. 6, 2017) at 246. This argument invited the jury to employ Mendez Leon's statement to police on December 24 in addition to his recorded statement on March 21 to convict David McCracken, despite a promise by the State not to use the contradictory earlier statements as substantive evidence.

The State emphasizes this passage from the prosecuting attorney's summation:

> So, the last thing I want to talk about is on *credibility—frankly, of Mr. Mendez Leon.* Now, he gave three statements that you guys basically heard or heard parts of. . . . Now, what's interesting is the consistent parts of his three statements are all the parts that don't put Mr. McCracken in trouble. The inconsistent parts today are the parts that are helping Mr. McCracken.

RP (Oct. 6, 2017) at 244 (emphasis added). This passage does mention an attack on Ernesto Mendez Leon's credibility, but does not inform the jury that the playing of the

20

March 21 recording or even the admission of the December 24 statement could only be used with assessing Mendez Leon's credibility.

The majority highlights this passage from the closing statement as limiting the purpose of Ernesto Mendez Leon's testimony to impeachment:

> You, as a jury, cannot find Mr. McCracken guilty based only on his testimony—or should not. You need to read the instruction.

RP (Oct. 6, 2017) at 246. Nevertheless, the jury instruction referenced is the instruction that states one cannot be convicted based on accomplice testimony alone. The comment by the State did not preclude the jury from considering Mendez Leon's recorded statement as compelling substantive evidence, combined with circumstantial evidence, when convicting McCracken.

The State played the March 21 recording for the jury. Before playing of the recording, defense counsel requested that the trial court permit the State to play only those portions of the interview that contained statements inconsistent with Ernesto Mendez Leon's trial testimony. The trial court denied the request. The playing of the entire recording, not just the impeaching portions, shows that the State and the trial court considered earlier statements as substantive evidence.

Impeaching evidence should effect only the credibility of the witness. *State v. Fliehman*, 35 Wn.2d 243, 245, 212 P.2d 794 (1949). Impeaching evidence is incompetent to prove the substantive facts encompassed in such evidence. *State v. Burke*,

21

163 Wn.2d 204, 219, 181 P.3d 1 (2008); *State v. Fliehman*, 35 Wn.2d at 245. The State may not use impeachment as a guise for submitting to the jury substantive evidence that would otherwise be inadmissible. *State v. Clinkenbeard*, 130 Wn. App. 552, 569-70, 123 P.3d 872 (2005); *State v. Babich*, 68 Wn. App. 438, 444, 842 P.2d 1053 (1993). A concern behind impeachment evidence is that prosecutors will exploit the jury's difficulty in making the subtle distinction between impeachment and substantive evidence. *State v. Hancock*, 109 Wn.2d 760, 763, 748 P.2d 611 (1988).

Defense counsel, perhaps based on the representation of counsel that the State would not use the recorded interview as substantive evidence, did not ask for a limiting instruction as to the use of the evidence when the State played the recording. When the State employed the recorded statements for substantive purposes during summation, however, defense counsel requested such an instruction to cure the prosecuting attorney's error.

A trial court can restrict the scope of a jury's consideration of evidence by issuing a limiting instruction. ER 105. ER 105 states:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

If evidence is offered for a limited purpose and a limiting instruction is requested, the court is usually obligated to give the instruction. *State v. Redmond*, 150 Wn.2d 489, 496,

78 P.3d 1001 (2003); *State v. Aaron*, 57 Wn. App. 277, 281, 787 P.2d 949 (1990). If inconsistent statements are admitted to aid the jury in judging the credibility of a witness and are not admissible as substantive evidence, the party whose witness is impeached generally has the right to an instruction limiting the admissibility of the inconsistent statement to that purpose. *State v. Fliehman*, 35 Wn.2d at 245 (1949); 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 613.17 (6th ed. 2016).

The trial court refused to provide a curative instruction directing the jury to limit its consideration of Ernesto Mendez Leon's earlier statements for impeachment purposes only. The trial court first erroneously concluded that the State only mentioned the earlier statements to law enforcement for impeachment purposes. Even if the State so limited the evidence, David McCracken was still entitled to the instruction because the jury could have employed the evidence for substantive purposes anyway.

When evidence could be relevant for multiple purposes, a jury cannot be expected to limit its consideration of that evidence to a proper purpose without an appropriate instruction to that effect. *State v. Mohamed*, 186 Wn.2d 235, 244, 375 P.3d 1068 (2016). Moreover, in the absence of a limiting instruction, the jury is permitted to consider the evidence for any purpose, including its truth. *State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997). Despite its pledge not to employ impeachment testimony for substantive purposes, the State, in closing, never told the jury it could not consider the inconsistent

23

statements as substantive evidence. More importantly, the trial court later erroneously refused to deliver the instruction because the court deemed the evidence substantive.

The trial court delivered the jury its instruction 21 that the jury cannot convict solely on the basis of an accomplice's testimony. The trial court need not have given this instruction unless the jury could use accomplice Ernesto Mendez Leon's inconsistent testimony for substantive evidence.

The State relies on *State v. Ramirez*, 62 Wn. App. 301, 814 P.2d 227 (1991), in which this court held that Juan Barrera waived the right to a limiting instruction because defense counsel did not ask for the instruction at the time the State presented its evidence. Nevertheless, the State, in *Ramirez*, never promised at the time of introduction of the evidence to use it for its limited purpose. Also, the trial court offered to give a limiting instruction if Barrera's counsel prepared it. David McCracken's trial court extended no offer to McCracken's trial counsel. Also, McCracken's trial counsel asked for the curative instruction after the State violated its pledge during the closing statement.

I already mentioned the difficulty in placing David McCracken in the shotgun seat without the impeaching testimony of Ernesto Mendez Leon. The rifle lay against and in the seat. Thus, failure to provide the requested curative instruction harmed McCracken.

Using impeachment evidence as substantive evidence of guilt may be prejudicial. *State v. Fliehman*, 35 Wn.2d at 245 (1949). A claim of harmless error should be closely examined when it results from the deliberate effort of the prosecution to get improper

24

evidence before the jury. *State v. Aaron*, 57 Wn. App. at 282 (1990). In *State v. Aaron*, this court reversed a conviction because the trial court refused to give a requested limiting instruction to hearsay evidence that directly tied Antonio Aaron to the stolen jacket. In *State v. Fliehman*, the Supreme Court reversed a conviction because the jury was permitted to consider impeachment testimony as substantive evidence.

Despite repeated promises from the State not to use the earlier statements from Ernesto Mendez Leon for substantive purposes, the State never once told the jury and the trial court never once remarked or instructed the jury that it could not consider any and all testimony and evidence for any purpose, let alone Ernesto Mendez Leon's earlier inconsistent hearsay statements, for the purpose of finding guilt. The jury would almost automatically thereby employ the prior statements of Mendez Leon to find guilt. By breaching its promise, the State gained a strong, if not insurmountable, advantage in convicting David McCracken. Two more errors increased the advantage.

The Wink

David McCracken complains about the prosecuting attorney's reference to a purported wink from Ernesto Mendez Leon to McCracken when Mendez Leon assumed the stand. The State's attorney told the jury, during opening closing and rebuttal closing, of a wink and encouraged the jury to consider the wink when assessing Mendez Leon's credibility. Nevertheless, the record does not indicate Mendez Leon winked.

A prosecutor's arguments calculated to appeal to the jurors' passion and prejudice

25

and encourage them to render a verdict on facts not in evidence are improper. *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988). Counsel may not make prejudicial statements not sustained by the record. *State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003). The prosecutor's duty is to ensure a verdict free of prejudice and based on reason. *State v. Claflin*, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984).

In response to David McCracken's complaint, the State contends that the prosecutor commits no misconduct when referring to a witness' demeanor on the stand during closing argument. I agree with this proposition. Nevertheless, claiming a witness winked at a party addresses more than a witness' demeanor while testifying. Ernesto Mendez Leon's alleged wink, according to the State, communicated to McCracken that Mendez Leon was McCracken's friend who would assist his defense.

The State also argues that the wink did not occur off the record because the eye expression occurred inside the courtroom. The State cites no legal authority for this contention.

One might argue that, assuming the jury saw the wink also, the State's attorney's remark caused no prejudice. In turn, as the argument goes, if the jury did not see the wink, the jury might hold the State's attorney's comment against the State. The argument fails to recognize the possibility that Ernesto Mendez Leon never winked and that all or some jurors concluded, based on the prosecuting attorney's remarks, that Mendez Leon winked but they missed seeing the wink. The argument also fails to recognize that the

26

prosecuting attorney mistook some other movement of Mendez Leon's eye as a wink. Finally, the argument fails to recognize that, if the wink was important, each juror could have drawn his or her own inferences without argument from counsel as to an event never recorded in the trial record.

Surprisingly, one foreign court entertained a challenge to a conviction because of the prosecution's reference to a wink between a party and a witness. In *Willyard v. State*, 72 Ark. 138, 78 S.W. 765 (1904), the State convicted G. F. Willyard before a justice of the peace of an assault and battery committed by whipping his thirteen-year-old daughter, Dessie. Willyard obtained a new trial in the circuit court. During summation, the prosecutor claimed that Willyard, in the trial before the justice of the peace, winked and nodded at Dessie while she testified. The prosecutor also told the circuit court jury that the jury before the justice of the peace convicted Willyard. Willyard's counsel objected to both statements of the prosecutor and the court sustained the objections. Still, the Arkansas Supreme Court reversed the conviction, in part, because reference to the wink prejudiced Willyard.

I recognize *Willyard v. State* to be a hoary and terse southern opinion. Also, the State can also legitimately distinguish *Willyard* because the alleged wink occurred off the record during an earlier trial. Nevertheless, the State cites no law to the contrary. Off the record is off the record regardless of whether the action occurred during an earlier or present trial.

27

I recognize that defense counsel never objected to the wink reference, and, thus, higher standards for reversal apply. Therefore, I would not reverse the conviction solely on the basis of this reference. Nevertheless, the reference contributes to cumulative trial unfairness and prejudice.

Constructive Possession of Rifle

Finally, David McCracken contends the prosecuting attorney committed misconduct when arguing constructive possession of the firearm to the jury. I agree. Again, trial counsel did not object to the constructive possession comments, so I might not reverse solely on this ground. The argument, however, added to the harmful cumulative error. The State's misstating of the law particularly harms a defendant.

A prosecuting attorney commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). A prosecutor's arguments to the jury must be confined to the law contained in the trial court's jury instructions. *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972). If a prosecutor mischaracterizes the law and the misstatement likely affected the jury verdict, the defendant is denied a fair trial. *State v. Gotcher*, 52 Wn. App. 350, 355, 759 P.2d 1216 (1988).

During closing, the State's attorney told the jury that everyone in the vehicle was guilty of constructive possession of the firearm. According to the prosecutor, even if David McCracken sat in the backseat, he possessed the rifle because he could have reached and grabbed the weapon. This argument misstated the law.

28

A felon may not lawfully possess a firearm. RCW 9.41.040. Possession may be actual or constructive. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012). The State may establish constructive possession by showing the defendant had dominion and control over the firearm. *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014) (Stephens, J., dissenting); *State v. Murphy*, 98 Wn. App. 42, 46, 988 P.2d 1018 (1999). Mere proximity to the firearm is insufficient to show dominion and control. *State v. Davis*, 182 Wn.2d at 234 (2014); *State v. Chouinard*, 169 Wn. App. at 899; *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010). The ability to reduce an object to actual possession is an aspect of dominion and control, but other aspects such as physical proximity should be considered as well. *State v. Chouinard*, 169 Wn. App. at 899; *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989). Knowledge of the presence of contraband, without more, is insufficient to show dominion and control to establish constructive possession. *State v. Chouinard*, 169 Wn. App. at 899; *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983).

Courts have found sufficient evidence of dominion and control in cases where the defendant drove the car, in which law enforcement found the weapon, or owned the firearm. *State v. Chouinard*, 169 Wn. App. at 899-9 00; *State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010). But courts hesitate to find sufficient evidence of dominion or control when the State charges passengers in the vehicle with constructive possession. *State v. Chouinard*, 169 Wn. App. at 900; *State v. George*, 146 Wn. App.

29

906, 923, 193 P.3d 693 (2008); *State v. Cote*, 123 Wn. App. 546, 550, 96 P.3d 410 (2004).

In State v. *Turner*, 103 Wn. App. 515, 524, 13 P.3d 234 (2000), this court found sufficient evidence for an unlawful constructive possession of a firearm conviction. A friend claimed he, not Rickey Turner, owned the gun. Nevertheless, evidence showed that Turner sat in close proximity to the gun in his truck that he knew of its presence in the backseat, that he was able to reduce it to his own possession, and that he owned and drove the truck in which the rifle was found. This court stated that key factors demonstrating Turner's constructive possession of the gun were his ownership of the gun and driving of the vehicle. When one controls the vehicle and holds knowledge of a firearm inside it, a rational jury can find constructive possession.

In *State v. McFarland*, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), *aff'd*, 127 Wn.2d 322, 899 P.2d 1251 (1995), this court upheld convictions for unlawfully possessing a firearm found in a car occupied by James McFarland. McFarland told an officer that he handled the gun when he took the gun from a house and placed it into the vehicle. This court found constructive possession because McFarland knowingly transported the gun in his car.

In *State v. Chouinard*, 169 Wn. App. 895 (2012), a jury found Marcus Anthony Chouinard guilty of first degree unlawful possession of a firearm. This court reversed the conviction because the State only demonstrated Chouinard's proximity to the weapon and

30

his knowledge of its presence in a vehicle.  Therefore, insufficient evidence supported the State's theory of constructive possession.

In *State v. Chouinard*, a bystander saw shots sprayed from a car, but the bystander could not determine if the shots originated from the driver's or passenger's side of the vehicle or from the front or back seats.  Law enforcement later stopped the car.  One person sat in the front passenger seat.  Chouinard was the sole backseat passenger.  The backrest for the backseat had been removed, which created a gap between the backseat and the trunk.  Officers found a rifle protruding from the trunk through the gap.  Chouinard conceded he knew of the rifle's presence in the car.  Because of a prior felony, the State charged Chouinard with unlawful possession of a firearm.

On appeal, in *State v. Chouinard*, this court held that the State failed to prove dominion and control over the rifle by Marcus Anthony Chouinard.  Chouinard neither owned nor drove the vehicle containing the firearm.  His close proximity to the rifle did not sustain the conviction.

David McCracken neither owned nor drove the sedan he occupied.  The State presented no testimony that McCracken ever touched the gun.  Therefore, the prosecuting attorney erroneously told the jury that McCracken's mere presence in the sedan sufficed to convict McCracken of unlawful possession of a firearm by reason of constructive possession.

The State claims it merely uttered remarks consistent with jury instruction 8 that delineated constructive possession. To the contrary, jury instruction 8 informed the jury that proximity alone does not establish constructive possession. The instruction directed the jury to review the entire circumstances, not merely the fact that David McCracken sat in the car.

I DISSENT:

_____
Fearing, J.