[No. 6777–3–II. Division Two. April 18, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. CURTIS SCOTT REID, *Appellant.*

*Randal B. Fritzler,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett, Deputy,* for respondent.

ALEXANDER, J.—Curtis Reid appeals his convictions by jury verdict for attempting to elude a police vehicle, possessing stolen property in the second degree, and being a convict in possession of a firearm. We affirm.

On October 27, 1982 at about 1:30 a.m., Portland, Oregon, police observed the defendant, Reid, attempting to

break into a Taco Time restaurant. Reid was not apprehended but the Portland police set up a surveillance of an automobile they found parked nearby with keys, a pistol, and car stereo parts visible inside. The officers watched this car, a red 1970 2-door Pinto hatchback, until 7 a.m, when Reid reappeared and drove off in the Pinto. They pursued the car north on Interstate 5 into the Vancouver, Washington, area, notifying local officers that their efforts to stop the car had been unsuccessful and that signals to stop were being ignored. Local law enforcement officers joined in the pursuit. Reid lost control of the auto soon after leaving Interstate 5 and he was arrested and taken into custody by local officers.

Portland police immediately seized a loaded handgun, holster and magazine which had been located on the passenger side floor of the Pinto. Reid told the police he had taken the gun in a Portland burglary that morning. The owner of a store in Portland testified to the fact that a gun had been taken in a burglary of his establishment and he identified the gun taken from Reid's car. Reid testified that he had put the gun out of reach under a pile of clothes in the backseat so it could not be seen. The arrest of Reid and the search of his automobile have not been challenged on appeal. The jury returned sentence–enhancing special verdicts making firearm and deadly weapon findings on all three counts.

 The defendant assigns error to the inclusion on the jury panel of a person who had been diagnosed as a paranoid schizophrenic. During voir dire of prospective jurors, one juror was asked if there was anything in his background which affected his ability to serve on the jury. The juror answered as follows:

> I've been diagnosed as a paranoid schizophrenic by Dr. McElhaney, what I know about is that it's a mental disorder but it doesn't impair intelligence.

The court then inquired of the juror on its own as follows:

> THE COURT: Mr. [W], are you under treatment now?
> JUROR [W]: Yes.

THE COURT: How long has this been going on?

JUROR [W]: Three or four years.

THE COURT: Is this relating to anything with your military background service?

JUROR [W]: No.

THE COURT: Has there been any court actions?

JUROR [W]: No.

THE COURT: All right, so this is just that you are in a voluntary treatment program with Dr. McElhaney?

JUROR [W]: Yes.

THE COURT: Okay, anything further, Mr. Bennett?

MR. BENNETT: Nothing.

Reid's counsel accepted this juror and did not exercise a peremptory challenge against him. In spite of his failure to challenge the juror, Reid argues that the inclusion of the juror on the panel denied him due process of law. There is no merit to this contention. Reid has not suggested that the juror was, in fact, unable to deliberate properly or reach a fair verdict by reason of a mental defect.[1] The law presumes that each juror sworn in a case is impartial and above legal exception; otherwise, he or she would have been challenged for cause. *State v. Kender*, 21 Wn. App. 622, 587 P.2d 551 (1978), *review denied*, 91 Wn.2d 1017 (1979). A party accepting a juror without exercising its available challenges cannot later challenge that juror's inclusion. *State v. Jahns*, 61 Wash. 636, 112 P. 747 (1911).

Reid also assigns error to the trial court's failure to grant his motion to dismiss the charge of convict in possession of a firearm. RCW 9.41.040. He argues that a prior conviction for burglary should not have been used as a basis for charging him with this offense since, he contends, it was based on an invalid guilty plea.

While Reid may collaterally attack the voluntariness of his prior guilty plea in this proceeding, *State v. Swindell*,

---

[1] RCW 4.44.160 provides in part as follows:

"General causes of challenge are: . . .

"(3) Unsoundness of mind, or such defect in the faculties of the mind, or organs of the body, *as renders him incapable of performing the duties of a juror in any action.*" (Italics ours.)

22 Wn. App. 626, 590 P.2d 1292 (1979), *aff'd,* 93 Wn.2d 192, 607 P.2d 852 (1980), there is no merit to his claim that the guilty plea was invalid.[2] Reid contends in his brief to this court, as he did to the trial court, that the prior guilty plea was invalid because he had not been told that he could be returned to a juvenile institution if the guilty plea for burglary was accepted. Apparently, Reid was then on escape status from a juvenile institution. He was subsequently required to serve time on that underlying juvenile offense consecutive to his adult sentence for burglary.

■ A defendant must, of course, be informed of all direct consequences of a guilty plea before it may validly be entered, but need not be informed of all possible collateral consequences. *State v. Barton,* 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). The distinction between direct and collateral consequences of a plea according to the *Barton* case "turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment". In *Barton,* the court concluded that a habitual criminal proceeding is not a direct consequence of a guilty plea. Subsequent deportation and parole revocation proceedings have also been found to be collateral effects. *State v. Malik,* 37 Wn. App. 414, 680 P.2d 770, *review denied,* 102 Wn.2d 1023 (1984); *State v. Brown,* 29 Wn. App. 770, 630 P.2d 1378, *review denied,* 96 Wn.2d 1013 (1981). The same can be said here. The return to a juvenile institution was a direct result of the prior juvenile conviction and escape. While the burglary conviction may have influenced Reid's return, the return was clearly a collateral consequence. The trial court properly denied the motion to dismiss.

■ Reid's counsel asserted for the first time in oral argument, that once a defendant challenges the validity of a prior guilty plea on which the State presently relies, on

---

[2]The rule in *State v. Swindell, supra,* is unaffected by the decision in *State v. Gonzales,* 103 Wn.2d 564, 693 P.2d 119 (1985), the *Gonzales* majority having specifically distinguished *Swindell.*

any ground, the State must prove that the plea was entered voluntarily and intelligently under the standards established in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980). In other words, he argues that *any* challenge opens the plea to question on any ground, and that the State must prove to the court anew the validity of a plea entered in a prior proceeding. That is not the law. The defendant's challenge must "[call] attention to the alleged unconstitutionality of a prior felony conviction". *State v. Swindell,* 93 Wn.2d 192, 196, 607 P.2d 852 (1980); *State v. Holsworth, supra.* He must direct the court to the specific acts or omissions he believes made the plea resulting in his conviction unconstitutional.

An examination of the record and particularly Reid's affidavit in support of the motion to dismiss clearly shows Reid was focusing his challenge on the earlier court's failure to inform him that he could be returned to a juvenile institution. The State conceded that Reid had not been so informed, and the trial court ruled as a matter of law that this failure to inform did not invalidate the prior plea. If Reid intended his motion as a broader challenge to the validity of the guilty plea, he had the obligation to make that challenge to the trial court. He may not do so for the first time on appeal.

Reid additionally assigns error to the trial court's denial of his motion to dismiss the firearm and deadly weapon enhancement provisions as applied to count 3, convict in possession of a firearm. He argues first that these provisions violate the constitutional protections against double jeopardy, U.S. Const. amend. 5; Const. art. 1, § 9, because the elements of the enhancement provisions are also elements of the crime charged. He contends that the Legislature, in setting sentencing limits, must have already taken into account the presence of a firearm or deadly weapon, and thus could not have intended to enlarge the sentencing parameters.

 This position is directly contrary to the holding of *State v. Harris,* 102 Wn.2d 148, 685 P.2d 584 (1984). Our

Supreme Court followed the holding of *Missouri v. Hunter,* 459 U.S. 359, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1983), and declined to apply a more protective standard under the Washington Constitution. The United States Supreme Court held that a state legislature could specifically author- ize cumulative punishment under separate statutes, even though the statutes might appear to proscribe the "same" conduct. Our court held that that was exactly what the Washington Legislature had done. While RCW 9.95.040 (deadly weapon enhancement) limits the parole board's discretion and RCW 9.41.025 (firearm enhancement) limits the sentencing judge's discretion, neither statute imposes additional or multiple punishment for the same offense or creates a separate criminal offense. *State v. Harris,* 102 Wn.2d at 159. There is no reason to distinguish *Harris,* involving first degree robbery, from this case. Both under- lying crimes involved the use or possession of a firearm or deadly weapon. Defendant was not put in double jeopardy by the weapons allegations.

 Reid further argues as part of this assignment that the prosecution violated the constitution by abusing its discretion in seeking the enhancement of all three counts without following written guidelines or standards. Reid cites no authority for his argument that the prosecutor's failure to employ written standards violates the "due pro- cess" and "equal protection" clauses of the United States Constitution. In view of his failure to cite authority, we reject the assignment without comment. RAP 10.3(a)(5); *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171, *cert. denied,* 439 U.S. 870 (1978).

 Finally, Reid assigns error to the trial court's failure to grant his motions to dismiss, for new trial, in arrest of judgment, and judgment n.o.v. on the basis that there was insufficient evidence to show that the defendant was armed with or in possession of a firearm or deadly weapon.[3] We

---

[3]RCW 9.41.040 defining unlawful possession requires a defendant be shown to own or have in his possession a short firearm or pistol. RCW 9.95.040, deadly

disagree. There was ample evidence from which a jury could conclude that the defendant had actual or constructive possession of a firearm. Reid admitted having the pistol in his car and admitted having it in front though he said he moved it to the back so it would not be seen by the police who were pursuing him. The question of whether or not a defendant is armed with or in possession of a weapon may be submitted to the jury if the trial court has a reasonable basis to believe the evidence will show actual or constructive possession. *State v. Rieger*, 96 Wn.2d 546, 637 P.2d 236 (1981). There was a reasonable basis for submitting this question to the jury and there is ample evidence to support their verdict.

We affirm.

REED, A.C.J., and PETRICH, J., concur.

Reconsideration denied May 16, 1985.

---

weapon enhancement, requires a defendant have been armed with a deadly weapon at the time of commission of the crime charged. RCW 9.41.025, firearm enhancement, requires a defendant have been armed with or in possession of any firearm. Both enhancement statutes have been repealed for crimes committed on or after July 1, 1984. Laws of 1981, ch. 137, §§ 32, 38.