[No. 41147-4-II.   Division Two.   August 8, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. MARCUS ANTHONY CHOUINARD, *Appellant*.

896

*Carol A. Elewski*, for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Brian N. Wasankari, Deputy*, for respondent.

¶1 JOHANSON, J. — A jury convicted Marcus Anthony Chouinard of first degree unlawful possession of a firearm.

Because the State demonstrated Chouinard's mere proximity to the weapon and his knowledge of its presence in the vehicle, we reverse Chouinard's conviction for insufficient evidence and therefore do not reach his other arguments.[1]

## FACTS

¶2  In December 2008, Sean Coleman, a security guard at Club Juno in downtown Tacoma, witnessed a blue car with a distinct Spiderman decal drive in front of the club, and from inside the car came multiple shots. Coleman "saw a gun out of the vehicle and [he] heard the shots," but he was unable, however, to identify a particular person as the shooter. 2 Verbatim Report of Proceedings (VRP) at 176. Nobody witnessed whether the shots were fired from the driver's or passenger's side of the vehicle, or from the front or back seats.

¶3  Club manager Mark Valerio then called 911 and described the "Spiderman" vehicle.[2] Shortly after Valerio phoned 911, Lakewood Police Officer Shawn Noble received information related to the shooting; and at roughly 1:00 a.m., he identified the Spiderman car traveling southbound. Officer Noble followed the Spiderman car for three miles until other officers—Lakewood Officers Jeremy Prater and Skeeter Manos and Tacoma Officer Jeff Thiry—approached the vicinity; then, Officer Noble stopped the vehicle on the Interstate 5 off-ramp at Gravelly Lake Drive. Officers removed the driver, Quinton Jones, and then its passengers. Passengers included Deandre Robinson, who had been in the front passenger seat, and Chouinard, who sat in the backseat. Police detained and handcuffed these men but did not arrest them.

---

[1] Chouinard also claimed that the trial court erred in denying his motion to suppress the firearm and in failing to define "dominion and control" in the jury instructions. At oral argument, Chouinard attempted to assign error to certain findings of fact for the first time. But under the Rules of Appellate Procedure, we may not review unchallenged findings raised for the first time at oral argument. RAP 10.3(a)(4); *State v. Ross*, 141 Wn.2d 304, 311, 4 P.3d 130 (2000).

[2] Throughout trial, witnesses referred to the car as the Spiderman vehicle.

¶4 Once officers removed the vehicle's occupants, Officers Manos and Prater "cleared" the car to "make sure that there's no remaining occupants in there hiding or anything else like that." 2 VRP at 112. As Officer Manos approached the vehicle to clear it, he noticed through the windows that the backrest on the backseat had been detached from the car, creating a gap between the backrest and the rear dash. He identified the rifle barrel, with an attached flash suppressor, protruding up from the trunk through this gap. Chouinard said that he knew nothing about the shots that had been fired from the Spiderman car outside Club Juno. He did acknowledge, however, that he had seen the gun behind the backseat. Officer Thiry testified that he asked Chouinard "[i]f he knew about the rifle," and, "[Chouinard] stated that, yes, he saw it behind the seat." VRP (July 27, 2010) at 48.

¶5 At trial for first degree unlawful possession of a firearm,[3] Chouinard stipulated that his prior felony record prohibited him from possessing firearms. Jones, the Spiderman car's owner, testified that he detached the backseat from the car to access the trunk from the passenger compartment. He admitted that a person sitting in the backseat could lean forward and pull the seat forward to reach over the backseat and grab contents from the trunk. He also stated that he and Chouinard had not left Club Juno in the Spiderman car, but instead in one of Jones's other cars; and they had switched into the Spiderman car at a nearby gas station minutes after leaving the club.

¶6 The jury convicted Chouinard of first degree unlawful possession of a firearm. Chouinard appeals.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

¶7 Chouinard asserts that the State presented insufficient evidence to convict him of unlawful possession of a

---

[3] RCW 9.41.040(1)(a).

firearm because it showed merely his proximity to the weapon. We agree and reverse for insufficiency of the evidence because the State demonstrated only Chouinard's proximity to the weapon and his knowledge of its presence, and because it failed to prove other facts necessary to show constructive possession, including dominion and control over the weapon.

## A. Standard of Review

■■ ¶8 We test the sufficiency of evidence by asking whether, when viewing evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of evidence. *State v. Raleigh*, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010), *review denied*, 170 Wn.2d 1029 (2011).

■ ¶9 A felon may not lawfully possess a firearm. *See* RCW 9.41.040. Possession may be actual or constructive. *Raleigh*, 157 Wn. App. at 737. The State may establish constructive possession by showing the defendant had dominion and control over the firearm. *State v. Murphy*, 98 Wn. App. 42, 46, 988 P.2d 1018 (1999), *review denied*, 140 Wn.2d 1018 (2000). Mere proximity to the firearm is insufficient to show dominion and control. *Raleigh*, 157 Wn. App. at 737. "[T]he ability to reduce an object to actual possession" is an aspect of dominion and control, but "other aspects such as physical proximity" should be considered as well. *State v. Hagen*, 55 Wn. App. 494, 499, 781 P.2d 892 (1989). And knowledge of the presence of contraband, without more, is insufficient to show dominion and control to establish constructive possession. *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983).

## B. Analysis

■ ¶10 Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in

which the defendant was either the owner of the premises or the driver/owner of the vehicle where contraband was found. *See State v. Bowen*, 157 Wn. App. 821, 828, 239 P.3d 1114 (2010); *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000); *State v. McFarland*, 73 Wn. App. 57, 70, 867 P.2d 660 (1994), *aff'd*, 127 Wn.2d 322 (1995); *State v. Reid*, 40 Wn. App. 319, 326, 698 P.2d 588 (1985); *State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). But courts hesitate to find sufficient evidence of dominion or control where the State charges passengers with constructive possession. *See State v. George*, 146 Wn. App. 906, 923, 193 P.3d 693 (2008); *State v. Cote*, 123 Wn. App. 546, 550, 96 P.3d 410 (2004).

¶11 In *Bowen*, we affirmed Bowen's conviction of unlawful possession of a firearm because Bowen owned, drove, and solely occupied the truck containing a firearm in a nylon bag next to Bowen's driver's seat. *Bowen*, 157 Wn. App. at 828. In *Turner*, we found sufficient evidence for an unlawful constructive possession of a firearm conviction. *Turner*, 103 Wn. App. at 524. A friend claimed the gun was his, not Turner's; but evidence showed that Turner sat in close proximity to the gun in his truck, that he knew of its presence in the backseat, that he was able to reduce it to his own possession, and that he owned and drove the truck in which the rifle was found. *Turner*, 103 Wn. App. at 521. We stated that a key factor demonstrating Turner's constructive possession of the gun was that he owned and drove the vehicle in which officers found the gun in close proximity to him:

> [W]here there is control of a vehicle and knowledge of a firearm inside it, there is a reasonable basis for knowing constructive possession, and there is sufficient evidence to go to the jury. In this case, there was even more to convict Turner, the proximity of the firearm, the extended duration of the time the firearm was in the truck, and that Turner did nothing to reject the presence of the firearm in the truck.

*Turner*, 103 Wn. App. at 524. Here, Chouinard neither owned nor drove the vehicle containing the firearm.

¶12 In *McFarland*, we upheld convictions for unlawfully possessing a short firearm. The trial court had heard evidence that the defendant and an associate were seen carrying sawed-off shotguns. *McFarland*, 73 Wn. App. at 70. The trial court then reasoned that even without the evidence of McFarland carrying the weapon, McFarland told an officer that he had touched the guns at the associate's parents' house, he had taken the guns from that house, and he had " 'handled' " the guns. *McFarland*, 73 Wn. App. at 70. We found constructive possession because McFarland had knowingly transported the guns in his car. *McFarland*, 73 Wn. App. at 70. In contrast, here, the State presented no evidence that Chouinard touched or handled the weapon or that he transported it in his vehicle.

¶13 In *Reid*, we upheld a conviction of unlawful possession of a firearm because Reid admitted to having a pistol in the front seat with him as he drove his car, and he said he had moved it to the back so pursuing police officers would not see it. *Reid*, 40 Wn. App. at 326. We concluded that a jury could have found his actual or constructive possession of the firearm. *Reid*, 40 Wn. App. at 326. Unlike Reid, Chouinard was not in his own vehicle and never handled the firearm.

¶14 In *Echeverria*, Division Three of this court upheld a conviction for unlawful firearm possession under a theory of constructive possession. During Echeverria's arrest, a gun stuck out from underneath his driver's seat. *Echeverria*, 85 Wn. App. at 780. Division Three reasoned that given "the gun was in plain sight at Mr. Echeverria's feet and the reasonable inference that he therefore knew it was there, a rational trier of fact could find Mr. Echeverria possessed or controlled the gun that was within his reach." *Echeverria*, 85 Wn. App. at 783. Significantly, Echeverria drove the car in which he was arrested. Whereas here, Chouinard rode as a passenger.

¶15 In *Cote*, Division Three reversed a conviction also dealing with constructive possession by a passenger in another's vehicle. Inside the automobile, authorities found a syringe and components of a methamphetamine lab, including Mason jars containing chemicals. *Cote*, 123 Wn. App. at 548. The State showed that Cote had been a passenger in the truck and that authorities had found his fingerprints on the jars. *Cote*, 123 Wn. App. at 548. Division Three held, "The evidence establishes that Mr. Cote was at one point in proximity to the contraband and touched it. But . . . this is insufficient to establish dominion and control." *Cote*, 123 Wn. App. at 550. Similarly, here the State presented insufficient evidence against Chouinard to establish dominion and control. Chouinard was a passenger in the vehicle where the contraband was found and he was in close proximity to the contraband, but there is not even evidence he touched the gun.

¶16 The facts here are analogous to *George*. In *George*, Division One of this court reversed George's drug-related conviction because it determined that the State did not prove his constructive possession of the contraband. George rode in the driver's side backseat while the vehicle's owner rode in the front passenger seat. *George*, 146 Wn. App. at 912-13. Troopers found a glass pipe with burnt marijuana inside, as well as empty beer cans and bottles on the floorboard behind the driver's seat, where George had been sitting. *George*, 146 Wn. App. at 912. A jury convicted George of marijuana and paraphernalia possession. On appeal, Division One reversed all counts for insufficient evidence, holding that George's mere proximity to the pipe and drugs, and knowledge of its presence, was insufficient to convict George of constructive possession. *George*, 146 Wn. App. at 923.

¶17 Like George, here Chouinard rode as a backseat passenger, and then police stopped the vehicle in which he rode and found contraband near his seat. Both George and Chouinard knew the contraband was in the vehicle next to

them, and in neither case did the State offer evidence that the defendants owned or used the contraband. Also, like *George*, which dealt with drug possession, a jury convicted Chouinard on a constructive possession theory, and there, Division One reversed for insufficient evidence, holding that although George rode as a passenger in near proximity to the contraband with knowledge of the contraband's presence next to him, the State produced insufficient evidence to establish dominion and control and convict him for constructive possession. We apply this reasoning here. As in *George*, the State demonstrated Chouinard's mere proximity to the weapon and his knowledge of its presence in the vehicle. This evidence, alone, does not sustain a conviction for constructive possession of a firearm.

¶18 Therefore, we reverse Chouinard's unlawful possession of a firearm conviction for insufficient evidence and remand to the trial court to dismiss the charge with prejudice.

WORSWICK, C.J., and HUNT, J., concur.

Review denied at 176 Wn.2d 1003 (2013).