# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57185-4-II |
| Respondent, | |
| v. | |
| BRIAN ELWOOD ANDERSON, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE, J. — Brian E. Anderson appeals his convictions for one count of second degree rape and three counts of first degree unlawful possession of a firearm. During Anderson's trial, his counsel had a medical emergency, which Anderson asserts impacted his counsel's performance. Anderson contends his counsel failed to impeach the rape victim, failed to conduct cross-examination of witnesses, failed to make objections, and failed to introduce certain evidence, resulting in ineffective assistance of counsel. Anderson also challenges the sufficiency of the evidence for his unlawful possession of a firearm convictions, arguing the State failed to show actual or constructive possession of the firearms.

We affirm Anderson's convictions.

## FACTS

### I. BACKGROUND

A.B. was an 18-year-old woman in November 2017 when she interviewed with Anderson for a job as a receptionist at a tattoo shop. Anderson previously owned the tattoo business, but he had given split ownership of it to his daughter and girlfriend in 2016.

At the beginning of the interview, Anderson explained that he had access to knives and guns around the property. He also explained that he had previously hurt people and insinuated that, if A.B. wanted him to, he could hurt people for her. Anderson then took A.B. into a smaller room in the business and raped her.[1]

Later the same day, A.B. told friends about the rape, and they urged her to go to the hospital. While there, A.B. explained the details of the rape to a sexual assault nurse examiner (SANE nurse) and a rape kit was performed. The hospital called law enforcement, which then began investigating Anderson for the rape.

During their investigation, law enforcement discovered that Anderson could not legally possess firearms because of his past criminal history. Law enforcement obtained a search warrant for the tattoo shop to search for firearms and to collect a DNA sample from Anderson. Officers arrived at the tattoo shop before it opened on the morning of December 19; Anderson arrived about ten minutes later. The officers frisked Anderson and retrieved keys to the business. Anderson's DNA was also collected for comparison with samples from the rape kit.

Using Anderson's keys, the officers searched the tattoo shop and found three firearms in the business. One was a rifle that was in the front desk area, easily accessible behind the reception desk. Two more firearms were found in plain sight in an office that was also unlocked using Anderson's keys. The officers also found a utility bill for the business in Anderson's name. Anderson was arrested at the scene.

---

[1] We have omitted the details of the rape to respect A.B.'s privacy.

Tests on the three firearms verified that they were all operational. And the rape kit confirmed that Anderson's DNA was present on A.B.

Anderson was charged with one count of second degree rape and three counts of first degree unlawful possession of a firearm—one count for each firearm found in the tattoo shop.

II. ANDERSON'S TRIAL

After a delay of over four years, Anderson's case proceeded to a jury trial. Several officers testified consistently with the facts stated above. Anderson's counsel conducted limited cross-examination of the officers.

A.B. and the SANE nurse also testified consistently with the facts above, but A.B.'s recollection of the rape differed slightly from her original statements to the SANE nurse. The differences included whether Anderson's pants were removed at any time, whether Anderson had been examining A.B.'s tattoos immediately before the rape, whether A.B. was facing toward or away from Anderson immediately before, and the timing of when Anderson removed A.B.'s pants and underwear. A.B. explained that the four-year delay between the rape and the trial impacted her memory, stating that "a lot of it I can remember clear as day" but that other things were less clear in her memory. *See* Verbatim. Rep. Proc. (VRP) at 375.

The above testimony took place between March 28 to 30 (Monday through Wednesday). But then Anderson's trial counsel experienced a medical emergency, resulting in a trial recess and immediate surgery.[2] Anderson's counsel appeared in court on the following Monday, April 4, and

---

[2] The details of the medical emergency are not included in our record.

explained to the trial court his concerns about being prepared for the rest of the trial without time to recover. The following colloquy occurred:

> [DEFENSE COUNSEL]: Well, Your Honor, I spoke with my client. I explained to him the situation, because I haven't passed him a lot of information about it, just some little things [Unintelligible] and stuff. And I think it was his under -- he felt that in his position he may be under a handicap in my being able to operate. You know, you don't get a perfect defense, but just based on how, you know, performance and what I could do for him. The preparation was probably off a bit, and just being able to go through the trial and the physical condition. So, that's his thing on it. So I -- you know, I can't say that it's necessarily unreasonable. It's never happened to me before, so I don't know what else to say on that, but I'm just passing through his comments.
>
> THE COURT: So, I certainly think it's probably important for the record to at least reflect that you have been unable to do much for the last, what, four days? You missed Thursday, a full day; Friday, a full day. It sounds like Saturday was also a day you weren't able to prep for trial, and without, you know, revealing too much, my understanding is that you're still under doctor's care at this time.
>
> [DEFENSE COUNSEL]: Yeah.
>
> THE COURT: And based on some information that we discussed to protect your privacy, I don't want to get into the details, but I do understand the concerns expressed.
>
> . . . .
>
> THE COURT: Right. So, I guess, . . . if the jurors are available, given your condition, I don't know where you're going to be at on a day to day basis, but I would prefer to try. . . . I'm scheduled to be on vacation next week, but I can -- I'm not going anywhere, so if I have to be here on Monday.
>
> [DEFENSE COUNSEL]: I'd give it a shot next Monday for sure, Your Honor. I think that --
>
> THE COURT: All right. Well, let's inquire with the jurors if Monday -- if they're available Monday and Tuesday.

VRP at 619-20, 622-23. Thus, the trial was postponed and did not resume until the following Monday, April 11, about one week later.

Once the trial resumed, the trial court asked if there was anything preventing the parties from moving forward and Anderson's counsel responded, "I'm ready to go. I don't . . . anticipate any problem." VRP at 660-61.

Anderson's girlfriend, Loveda Irvin, testified for the defense. Irvin testified that in 2017 she co-owned the tattoo shop with Anderson's daughter. Irvin also testified that she owned two of the firearms in the tattoo shop. She said she did not know who the other firearm belonged to and explained that it was just for display.

Anderson also testified. He denied he raped A.B. and claimed that he thought two of the firearms were inoperable and only for display and that he did not have access to the third gun.

The jury found Anderson guilty of all charged counts. Prior to sentencing, Anderson's counsel moved for a new trial because Anderson "[thought his counsel's] conduct was affected by [his] medical condition." VRP at 880. The trial court asked if Anderson was making an ineffective assistance of counsel argument, and Anderson's counsel confirmed he was. The trial court denied the motion.

Anderson appeals.

## ANALYSIS

On appeal, Anderson makes two arguments: (1) that he received ineffective assistance of counsel, and (2) that there was insufficient evidence for his possession of an unlawful firearm convictions. We address each argument in turn.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

As support for his claim of ineffective assistance of counsel, Anderson identifies several alleged deficiencies, which he seems to attribute to his counsel's medical condition. First,

Anderson argues that his counsel was ineffective when he conducted limited cross-examination of A.B. and did not impeach A.B. based on prior inconsistent statements to the SANE nurse and others. Second, Anderson asserts his counsel failed to object to any other witnesses' testimony and conducted "very limited cross-examination of the [S]tate's witnesses." Opening Br. of Appellant (Opening Br.) at 17. Third, Anderson asserts his counsel failed to introduce evidence or elicit testimony that he and Anderson had discussed prior to trial. Anderson contends these claimed deficiencies, likely rooted in his counsel's physical condition, constitute ineffective assistance of counsel.

To show ineffective assistance of counsel, the appellant must demonstrate that their counsel's performance was deficient and the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). We engage in a strong presumption that counsel's performance was reasonable. *Id.*

A. THE LIMITED CROSS-EXAMINATION AND LACK OF IMPEACHMENT OF A.B. WAS A LEGITIMATE TRIAL TACTIC

Anderson argues his counsel was deficient because he failed to extensively cross-examine A.B. Anderson contends that his counsel should have impeached A.B. on the inconsistency of her statements at trial and her report to the SANE nurse immediately after the rape. Anderson also vaguely argues that he and "others who were familiar with the defense" knew of "other

6

inconsistencies in [A.B.'s] version[s] of events that were reported to the police during the investigation" that his counsel should have brought out during cross-examination. Opening Br. at 16. Anderson asserts that these alleged errors were deficient performance. We disagree.

Generally, to show that trial counsel was deficient, " 'the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel.' " *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)). When counsel's conduct can be reasonably characterized as a legitimate trial strategy or tactic, counsel's performance is not deficient. *Grier*, 171 Wn.2d at 33. But a defendant can "rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Id.* (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). "Not all strategies or tactics on the part of defense counsel are immune from attack." *Id.* at 33-34. " 'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.' " *Id.* at 34 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

Here, defense counsel's limited cross-examination of A.B. could have been a legitimate trial strategy. A.B. gave a lengthy and detailed description of Anderson raping her. Her explanation was largely consistent with her original report to the SANE nurse, with only minor differences. And A.B. explained that some of her memories of the event were clear, while others were not. It is plausible that a reasonable juror would accept small differences in A.B.'s recollection given that she was being asked to remember specific details of a traumatic event over four years later.

If, in the context of this four-year delay, Anderson's counsel had aggressively impeached A.B. due to the minor differences in her testimony, it is reasonable to believe it may have backfired. Rather than making A.B. less credible to the jury, maybe it would have instead repeated and highlighted certain aspects of the rape and, if A.B. was seen as sympathetic, poisoned the defense in the eyes of the jury. Maybe not. But given these possibilities, counsel's decision to not aggressively impeach A.B. can be characterized as a reasonable, legitimate trial tactic. Thus, counsel's performance in his cross-examination of A.B. was not deficient, and this ineffective assistance of counsel claim fails.

Anderson also argues that there were other inconsistencies his counsel could have elicited from A.B.—this claim similarly fails. Anderson vaguely contends that such inconsistencies existed, but he does not explain what they are or cite to any part of the record that shows the inconsistencies. We therefore do not further consider this argument. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (we will not consider issues that are not supported by references to the record or argument).

B. ANDERSON HAS NOT SHOWN DEFICIENT PERFORMANCE BASED ON LACK OF OBJECTIONS OR CROSS-EXAMINATION

Separate from his arguments specific to A.B., Anderson also argues his counsel generally failed to object to any witnesses' testimony and performed "very limited cross-examination of the [S]tate's witnesses," resulting in deficient performance. Opening Br. at 17.

Here, too, Anderson's claim fails for a lack of support in the record. Anderson does not point to any objectionable testimony that was offered or further explain how the lack of objections were deficient performance. Anderson similarly fails to explain or cite to any part of the record

for his counsel's alleged lack of cross-examination that could constitute deficient performance. We do not further consider these arguments. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (we will not consider issues that are not supported by references to the record or argument).

C.  ANDERSON FAILS TO SHOW COUNSEL'S FAILURE TO INTRODUCE EVIDENCE WAS DEFICIENT PERFORMANCE

Finally, Anderson argues he received ineffective assistance because his counsel failed to introduce evidence and elicit testimony they had previously discussed. Anderson asserts he and his counsel discussed specific trial strategies that his counsel did not execute, such as discussing the structure of the tattoo business and Anderson's weakened physical stature.

Again, however, Anderson fails to cite any evidence or part of the record showing these pretrial discussions occurred. We therefore do not consider this argument. *See* RAP 10.3(a)(6); *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (we will not consider issues that are not supported by references to the record). Assuming Anderson obtains evidence of his pretrial strategy discussions with his counsel, this argument could be more appropriate for a personal restraint petition. *See McFarland*, 127 Wn.2d at 335 (explaining that we only consider evidence in our record and arguments including facts outside of the record are more appropriate for a personal restraint petition).

Anderson fails to show that any of his counsel's actions rose to the level of deficient performance. Therefore, Anderson's ineffective assistance of counsel claim fails.[3]

---

[3] Anderson also argues the trial court erred when it did not grant his request for a new trial based on ineffective assistance of counsel and argues that cumulative errors related to his counsel's

D.  ANDERSON FAILS TO SHOW COUNSEL'S ILLNESS IMPACTED HIS PERFORMANCE

An overarching theme to Anderson's ineffective assistance of counsel claim is that his counsel's performance was impacted to the point of being deficient by his medical emergency.  It is certainly true that Anderson's counsel suffered some sort of medical emergency, but it does not necessarily follow that Anderson received ineffective assistance of counsel as a result.

Anderson has pointed to nothing concrete to show that his counsel's performance was affected by his health prior to the recess taken for the surgery.  And as explained above, after the emergency occurred, Anderson's trial was delayed for over a week to enable counsel to recover and prepare for resuming the trial.  Counsel confirmed that following the delay, he was "ready to go."  VRP at 660.  All Anderson has shown is that his counsel was unwell in the middle of his trial and a short recess resulted.  This does not demonstrate Anderson received ineffective assistance.[4]

II.  SUFFICIENT EVIDENCE FOR FELON IN POSSESSION CONVICTIONS

Anderson challenges the sufficiency of the evidence for his convictions of unlawful possession of the firearms.  Anderson argues that the State did not prove he had possession, actual or constructive, of the three firearms in the tattoo shop and that, at best, the State proved no more than a close proximity to the firearms.  We disagree.

---

alleged ineffective assistance were cumulative errors that deprived Anderson of a fair trial. Because Anderson's underlying ineffective assistance of counsel claim fails, he also fails to show that the trial court erred when it denied the request for a new trial or that cumulative errors resulted in an unfair trial.

[4] If Anderson found evidence, beyond speculation, that showed his counsel's performance was actually and substantially impacted, his claim could be appropriate for a personal restraint petition. *See McFarland*, 127 Wn.2d at 335 (explaining that we only consider evidence in our record and arguments including facts outside of the record are more appropriate for a personal restraint petition).  But we have no such evidence before us on this record.

Evidence is sufficient to support a guilty verdict if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, he admits the truth of the State's evidence, and all reasonable inferences drawn from that evidence are to be construed in favor of the State. *Id.* at 265-66.

To convict Anderson of first degree unlawful possession of a firearm, the State had to prove beyond a reasonable doubt that he knowingly possessed a firearm after having been convicted of a serious offense. RCW 9.41.040(1)(a).

Possession may be actual or constructive. *State v. Chouinard*, 169 Wn. App. 895, 899, 282 P.3d 117 (2012), *review denied*, 176 Wn.2d 1003 (2013). Actual possession requires physical custody of the item. *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010), *review denied*, 171 Wn.2d 1006 (2011). Constructive possession, on the other hand, occurs when a person has dominion and control over an item. *Id*. Whether sufficient evidence establishes that a defendant had dominion and control over an item depends on the totality of the circumstances. *State v. Lakotiy*, 151 Wn. App. 699, 714, 214 P.3d 181 (2009), *review denied*, 168 Wn.2d 1026 (2010). An ability to take actual possession of the item establishes dominion and control, but "mere proximity" to the item "is not enough to establish possession." *State v. Jones*, 146 Wn.2d 328, 333, 45 P.3d 1062 (2002).

Anderson argues that the State failed to show anything more than mere proximity to the three firearms. Anderson contends that two of the firearms were only for display behind a

reception desk and the third was located in a locked office to which he did not have access. Anderson also emphasizes that he did not own the firearms.

Anderson's arguments are unpersuasive. Law enforcement witnesses testified that they accessed the tattoo shop using keys taken from Anderson. And once in the tattoo shop, the firearms were readily accessible; one firearm was hanging behind the reception desk on the wall and the other two firearms were located in plain view in an office. Although the office was locked, Anderson's keys unlocked the door. Further, a utility bill for the business carried Anderson's name, confirming his close association with the business. Finally, A.B. testified that during the beginning of her interview, Anderson had boasted about his access to the guns around the property.

With all inferences construed in a light most favorable to the State, the evidence shows Anderson had more than just mere proximity to the weapons, regardless of the firearms' ownership. From the totality of the circumstances under the appropriate standard, Anderson had dominion and control over the firearms sufficient for constructive possession. Anderson's sufficiency of the evidence claim fails.

## CONCLUSION

Anderson fails to show he received ineffective assistance of counsel. Additionally, construing all inferences in favor of the State, there was sufficient evidence supporting Anderson's unlawful possession of a firearm convictions. We affirm.

No. 57185-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

CHE, J.