# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58401-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| NATHAN PETERSON, | |
| Appellant. | |

CHE, J.—Nathan Peterson appeals his convictions for second degree unlawful possession of a firearm and four counts of possession of a controlled substance with intent to deliver while armed with a firearm, specifically challenging the findings that he committed the drug offenses while armed with a firearm.

Peterson led police on a high-speed pursuit. Later, officers searched the trunk of the car and found a loaded rifle and a backpack that contained drugs, a pistol magazine, and bullets, among other things. The jury found Peterson guilty of second degree unlawful possession of a firearm and four counts of possession of a controlled substance with intent to deliver while armed with a firearm.

Peterson argues that (1) insufficient evidence exists to prove that he possessed the rifle found in the trunk of the car, (2) insufficient evidence exists to prove that Peterson was armed

with a firearm during his drug offenses, and (3) his conviction for unlawful possession of a firearm violates the Second Amendment.

We hold that (1) sufficient evidence exists that Peterson possessed the rifle, (2) sufficient evidence exists that he committed the four counts of unlawful possession of a controlled substance with intent to deliver while armed with a firearm, and (3) Peterson's as-applied challenge to Washington's unlawful possession of a firearm statute fails.

Accordingly, we affirm Peterson's convictions.

FACTS

On an evening in November 2022, Austyn Cox and a passenger were driving in Port Angeles in Cox's sports car. Cox and a car in the adjacent lane stopped at a red light. When the light turned green, the car "took off," and Cox began racing the car. 1 Rep. of Proc. (RP) (May 1, 2023) at 257. At some point, the car drove closely behind Cox's vehicle, and Cox heard two gunshots. The car then passed him, and Cox called 911.

Deputy Steffen Estep saw the car drive past him at a high rate of speed and began pursuing the car. When Deputy Estep caught up to the car, it was traveling at 78 mph in a 45-mph zone, and Deputy Estep activated his marked patrol vehicle's emergency lights. The car did not pull over nor slow down. Deputy Estep continued pursuing the car, turned on his siren, and at one point, saw the car drive into an oncoming lane of traffic, forcing several cars off the road. At this time, the car was driving at approximately 90 mph. Deputy Estep continued his pursuit, which at times approached 100 mph.

At one point, a passenger threw items out of the car. Later, along the road, law enforcement recovered parts of a ".223 AR style" automatic rifle, two empty ammunition boxes,

a discarded backpack containing a cell phone that was receiving text messages upon recovery, a rifle magazine, shotgun shells, and both .223 and .22 caliber ammunition. 1 RP (May 2, 2023) at 497.

To stop the car, police deployed spike strips and performed two precision immobilization technique (PIT) maneuvers[1] before the car spun, flipped over, and landed upside down in a ditch. Officers at the scene removed Peterson, Scarlett Lynch, Mack Lefeaux, and Christopher Tavita.

Law enforcement towed the car right side up from the scene to a police evidence garage. Later, in December, officers obtained a search warrant and searched the car. Under the front passenger seat, they found an AR-15 magazine with 27 ".23 rounds" inside of it. 1 RP (May 2, 2023) at 376. When the officers opened the trunk, they immediately saw the buttstock of a rifle "sticking straight out" of the trunk as well as several backpacks. 1 RP (May 2, 2023) at 377, Exs. 29, 30. The rifle was a .22 Mossberg Plinkster. Officers removed one round from its chamber and six rounds from the magazine, and subsequent testing showed the rifle was operational.

Inside one of the backpacks in the trunk, officers found a fanny pack containing $9,386 in cash. Inside the same backpack, officers also found, among other things, large baggies containing approximately 1,000 blue fentanyl pills, a large number of needles, a pistol magazine containing eight rounds of 9mm ammunition, a large bag of 9mm bullets, a baggie containing many tiny baggies, a folding electronic scale, a bag containing several additional bags of blue fentanyl pills, 11.05 grams of cocaine, 19.32 grams of heroin, and 24.30 grams of

---

[1] A PIT maneuver is an attempt to disable a vehicle by using the front end of one vehicle to hit the back end of the other vehicle to spin it out and stop it.

methamphetamine. Officers also found drug paraphernalia outside of the backpack, in the trunk. Officers did not find any indicia of ownership inside the car.

Lynch testified at trial that prior to the police pursuit, she left her home, and Peterson drove them to a store. After the store, Peterson drove her to a motel to pick up two of his friends, Lefeaux and Tavita. Peterson then drove the group when they left the motel. Prior to leaving the motel, Peterson placed a backpack into the truck of the car, as shown by motel video surveillance footage.

Lynch sat in the back passenger seat of the car, and Tavita sat in the front passenger seat. While riding, Tavita fired a gun multiple times out the window with no warning. Lynch then asked to get out of the car multiple times. Lynch saw Tavita throw a gun out of the passenger side window. She testified that the gun was "big," had a laser pointer on it, and was like an automatic rifle. 1 RP (May 2, 2023) at 330.

Peterson testified that he did not know Tavita had a gun or that there were any guns in the interior of the car. Peterson saw Tavita fire a "black pistol," not an AR-15.[2] 2 RP (May 3, 2023) at 575. The AR-15 and pistol "came out of the backseat," and Peterson thought "[t]hey were in the backpack." 2 RP (May 3, 2023) at 576.

Peterson admitted to driving the car and owning a backpack, as well as its contents, found in the trunk. His backpack was near the .22 rifle and contained 9mm ammunition, about $10,000 in cash, $1,000 worth of fentanyl pills, $600 worth of methamphetamine, $1,000 worth of cocaine, and $1,000 worth of heroin. Peterson claimed that the drugs were for his personal use and that he did not sell drugs. Peterson agreed that the motel video surveillance footage showed

---

[2] Police did not recover a pistol.

4

him putting his backpack into the trunk of the car, but he denied owning any firearms and denied seeing the rifle in the trunk. Peterson also testified that Lefeaux and Tavita put items into the trunk after Peterson did and that Tavita drove the car before they arrived in Port Angeles. He acknowledged that he was aware of the box of ammunition in the car.

The State charged Peterson by third amended information with, among other crimes, second degree unlawful possession of a firearm and four counts of possession with intent to deliver a controlled substance (fentanyl, methamphetamine, cocaine, and heroin), each of the four counts committed while armed with a firearm.[3, 4] The jury found Peterson guilty of these crimes.[5]

Peterson appeals.

ANALYSIS

I.  SUFFICIENCY OF THE EVIDENCE

A.    *Legal Principles*

When determining whether the evidence is sufficient to sustain a conviction, we examine whether, after viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found the essential elements of [the crime] beyond a reasonable doubt.'" *State v.*

---

[3] The State also charged Peterson with two counts of second degree assault while armed with a firearm, attempting to elude a pursuing police vehicle with a special allegation of endangerment by eluding, and unlawful imprisonment. The jury found Peterson not guilty of second degree assault and guilty of the remaining charges, including all special allegations. On appeal, Peterson does not challenge these convictions.

[4] Peterson stipulated at trial that he had a prior non-serious offense felony conviction.

[5] On appeal, Peterson does not challenge the possession of a controlled substance with intent to deliver portion of his convictions but rather, the findings that he committed the drug offenses while armed with a firearm.

*Bertrand*, 3 Wn.3d 116, 139, 546 P.3d 1020 (2024) (quoting *State v. Hampton*, 143 Wn.2d 789, 792, 24 P.3d 1035 (2001) (emphasis omitted) (alteration in original)).

A challenge to the sufficiency of the evidence necessarily admits the truth of the State's evidence and all reasonable inferences drawn from the evidence. *State v. Bergstrom*, 199 Wn.2d 23, 41, 502 P.3d 837 (2022). We view circumstantial and direct evidence as equally reliable. *State v. Restvedt*, 26 Wn. App. 2d 102, 116, 527 P.3d 171 (2023). We defer to the trier of fact on issues of the persuasiveness of evidence, witness credibility, and conflicting testimony. *Bergstrom*, 199 Wn.2d at 41.

B.      *Sufficient Evidence Exists for Unlawful Possession of a Firearm*

Peterson argues that insufficient evidence exists to prove beyond a reasonable doubt that he possessed the rifle found in the trunk of the car. Specifically, Peterson contends that the State "never met the standard for constructive possession." Br. of Appellant at 10. He asserts close proximity alone is not enough to establish constructive possession of a firearm and merely showing dominion and control over the car does not itself prove dominion and control over the firearm. We disagree that insufficient evidence exists to prove Peterson's unlawful possession of a firearm.

Washington's unlawful possession of a firearm statute provides that a person is guilty of second degree unlawful possession of a firearm if the person does not qualify for the crime of first degree unlawful possession of a firearm and "owns, accesses, has in the person's custody, control, or possession, or receives any firearm . . . [a]fter having previously been convicted . . . in this state or elsewhere of . . . any felony not specifically listed as prohibiting firearm possession" under the first degree unlawful possession of a firearm subsection. RCW 9.41.040(2)(a)(i)(A).

Possession can be actual or constructive. *State v. Flores*, 18 Wn. App. 2d 486, 494, 492 P.3d 184 (2021). A defendant actually possesses an item if it is in their "'personal custody.'" *Id.* (quoting *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994)).

To determine whether a defendant constructively possessed an item, we examine whether, under the totality of the circumstances, the defendant exercised dominion and control over said item. *See State v. Listoe*, 15 Wn. App. 2d 308, 326, 475 P.3d 534 (2020). The ability to immediately take actual possession of an item can establish dominion and control. *Id.* at 326-27. In addition, ownership of the item and, in some circumstances, ownership of the premises are factors supporting dominion and control. *Id.* at 327. But having dominion and control over the premises where the item was found does not, by itself, establish constructive possession. *See id.* For purposes of this inquiry, a vehicle is a "premises." *State v. Turner*, 103 Wn. App. 515, 521, 13 P.3d 234 (2000).

The State must show more than proximity alone to establish constructive possession. *State v. Lee*, 158 Wn. App. 513, 517, 243 P.3d 929 (2010). Thus, a defendant with prior felony convictions "may not be in violation of the law by simply being near a firearm" if they have not exercised dominion or control over the firearm or premises where it is found. *Id.*

"[U]nwittingly having a firearm located close enough to a person who could reduce it to their control is sufficient to establish constructive possession." *Flores*, 18 Wn. App. 2d at 494. In addition, courts have found sufficient evidence of constructive possession, and dominion and control, in cases where the defendant was "either the owner of the premises or the driver/owner of the vehicle where contraband was found." *State v. Chouinard*, 169 Wn. App. 895, 900, 282 P.3d 117 (2012).

Here, the facts show more than Peterson's close proximity to the rifle and his dominion and control over the car. Peterson drove the car after picking up Lynch at her home, drove Lynch to the store, drove the car to the motel to pick up two other passengers, and then drove the car when leaving the motel. Prior to leaving the motel, Peterson put his backpack containing a significant amount of drugs, money, drug paraphernalia, and 9mm bullets into the car trunk, which showed he used the trunk to store his personal items. When Peterson accessed the trunk, this showed he was close enough to the .22 rifle to reduce it to his control.

Peterson claimed ownership of his backpack in the trunk, which contained a bag of 9mm bullets and a magazine with 9mm ammunition even though he denied owning any firearms himself. Peterson denied knowledge of any firearms inside the car, but he claimed Tavita fired a pistol and that the pistol and AR-15 rifle came from a backpack from the backseat. While police did not recover any pistol, they did recover from along the road parts of an automatic rifle with a light and scope, and a discarded backpack containing a rifle magazine, shotgun shells, and both .223 and .22 caliber ammunition. Inside the car, police found a loaded AR-15 magazine, and inside the trunk, police found the .22 rifle. Though Peterson testified to evidence that cast doubt on his possession of the .22 rifle, we defer to the jury on issues of the persuasiveness of evidence, witness credibility, and conflicting testimony. *Bergstrom*, 199 Wn.2d at 41. Based on these facts, viewed in the light most favorable to the State, a jury could find beyond a reasonable doubt that Peterson possessed the .22 rifle in the trunk of the car.

Next, Peterson asserts that he was not the owner or renter of the car. Ownership of the car is relevant but not necessarily dispositive, especially where the defendant was the driver and not a passenger. *See Turner*, 103 Wn. App. at 523-34; *see also Listoe*, 15 Wn. App. 2d at 327.

And as explained above, the State did not need to prove that Peterson owned the car to have constructive possession of its contents.

Peterson likens his case to *Chouinard*. In *Chouinard*, the defendant was a passenger in the backseat of a car. 169 Wn. App. at 897. Chouinard knew a firearm was behind the backseat. *Id.* at 898. However, we concluded that the evidence was insufficient to prove constructive possession because there were other occupants in the car, and there was no evidence Chouinard was in control of the car or firearm. *Id.* at 900-03. We held that knowledge of and proximity to a firearm were insufficient to prove constructive possession where the defendant did not have dominion and control over the vehicle. *Id.* at 902-03. But in that case, Chouinard was a mere passenger in the vehicle, not the driver, and courts have distinguished cases in which the defendant was the driver. *Id.* at 900-03. *Chouinard* does not control here because Peterson was the driver.

In examining the totality of the circumstances and viewing the evidence in the light most favorable to the State, we hold that a rational jury could find from the evidence that Peterson constructively possessed the .22 rifle. Therefore, Peterson's sufficiency of the evidence challenge fails.

C.    *Sufficient Evidence Exists to Prove Peterson Committed the Drug Offenses While Armed With a Firearm*

Peterson contends that insufficient evidence exists to prove that he was armed with a firearm during his drug offenses. We disagree.

"[A]dditional times shall be added to the standard sentence range for felony crimes . . . if the offender . . . was armed with a firearm." RCW 9.94A.533(3).

9

We review de novo whether the facts are sufficient as a matter of law to prove that a defendant was armed during the crime. *State v. Sassen Van Elsloo*, 191 Wn. 2d 798, 825, 425 P. 3d 807 (2018). For the State to establish that a defendant was armed for the purpose of a firearm enhancement, it must prove "(1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *Id.* at 826. "[W]hen the crime is of a continuing nature, such as a drug operation, a nexus exists if the firearm is 'there to be used' in the commission of the crime." *Id.* at 828 (quoting *State v. Gurske*, 155 Wn.2d 134, 138, 118 P.3d 333 (2005)).

The close proximity, presence, or constructive possession of a firearm at the crime scene is, alone, insufficient to show that the defendant was armed for the purpose of a firearm enhancement. *Id.* at 826. "A defendant 'does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement,' and the State 'need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime.'" *Id.* at 826-27 (quoting *State v. O'Neal*, 159 Wn.2d 500, 504-05, 150 P.3d 1121 (2007)).

First, Peterson asserts there was "no ready accessibility for use." Br. of Appellant at 20. Peterson argues that his case is like *State v. Gurske*, 155 Wn.2d 134, 118 P.3d 333 (2005).

In *Gurske*, the parties submitted stipulated facts, and the trial court convicted Gurske of possession of a controlled substance while armed with a pistol that officers found in a zipped-up backpack in the back seat of the defendant's truck. *Id.* at 136-37. The Supreme Court determined that the pistol was not easily accessible and readily available because the backpack

10

was zipped, and Gurske could not remove the pistol unless he first exited the truck or moved into the passenger seat, unzipped the backpack, and removed a torch that was on top of the pistol. *Id.* at 143-44. The court vacated the weapon enhancement, concluding that no nexus existed between the pistol and the crime because the State presented no evidence that Gurske "had used or had easy access to use the weapon against another person at any other time," such as when he acquired or was in possession of the drug. *Id.* at 143.

But here, the State presented evidence that the .22 rifle was easily accessible and readily available to Peterson when he possessed the drugs with intent to deliver, and that there was a nexus among the defendant, the crime, and the rifle. Peterson does not dispute that he committed the four unlawful possession of a controlled substance with intent to deliver offenses. Rather, he challenges the findings that he committed the drug offenses while armed with a firearm. The .22 rifle was located in the car trunk near his backpack containing the drugs with the buttstock of the rifle sticking up. It had one bullet in the chamber and six in the magazine, and subsequent testing showed the rifle was operational. The rifle was not kept in a lock safe or case, so it could easily be grabbed by someone as they accessed the drugs in the backpack. This is sufficient to support the conclusion that the firearm was "'there to be used'" in the commission of the drug offenses. *Sassen Van Elsloo*, 191 Wn.2d at 828 (quoting *Gurske*, 155 Wn.2d at 138).

Motel video surveillance footage showed Peterson putting his backpack containing a large amount of illegal drugs into the trunk. Evidence also showed that Peterson attempted to elude the police. Given the volume of drugs in the trunk, the location of the .22 rifle in the trunk, and Peterson's prior access to the trunk for storage of his personal belongings, a reasonable inference is that the rifle in the trunk was easily accessible and readily available to Peterson at

the time he committed the crimes. There is considerable circumstantial evidence that the .22 rifle was there to protect the criminal enterprise, and that it was easily accessible and readily available when Peterson possessed the drugs with intent to deliver.

Taking the evidence in the light most favorable to the State, we hold that sufficient evidence exists to prove that the .22 rifle was easily accessible and readily available, and that there was a nexus among Peterson, the rifle, and the commission of the drug offenses.

## II. SECOND AMENDMENT CHALLENGE

Peterson raises an as-applied challenge, alleging that under *New York State Rifle & Pistol Ass'n v. Bruen*,[6] (*New York State Rifle*), his conviction for unlawful possession of a firearm violates the Second Amendment because the State has failed to prove "that a restriction on the right to bear arms is consistent with this nation's historical tradition of firearm regulation." Br. of Appellant at 27. We disagree and abide by our reasoning in *State v. Ross*, 28 Wn. App. 2d 644, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026 (2024), and *State v. Bonaparte*, 32 Wn. App. 2d 266, 554 P.3d 1245 (2024).

A.     *Legal Principles*

We review the constitutionality of a statute de novo. *State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020). We presume statutes are constitutional, and it is the challenger's burden to prove otherwise. *Id.*. An as-applied challenge, such as the one Peterson asserts here, requires us to examine the statute in the specific circumstances of the case. *Ross*, 28 Wn. App. 2d at 646. When a court holds a statute unconstitutional as applied to a challenger, this does not

---

[6] 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).

invalidate the statute but "prohibits its application in that specific context and future similar contexts." *Id.*

The Second Amendment to the United States Constitution states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment protects the right of "ordinary, law-abiding citizen[s]." *New York State Rifle*, 597 U.S. at 9. But the right to bear arms has limits, which include "longstanding prohibitions on the possession of firearms by felons." *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008).

B.      *Peterson's Second Amendment Claim Fails*

In *Ross*, Division One of this court examined recent United States Supreme Court jurisprudence on the constitutionality of certain restrictions on the possession of firearms. 28 Wn. App. 2d at 647-50. The court noted that, in *Heller*, the Supreme Court explicitly recognized and affirmed restrictions on firearm possession by felons by stating that "'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons.'" *Id.* at 647 (quoting *Heller*, 554 U.S. at 626-27).

After *Heller*, in *McDonald v. City of Chicago*, the Supreme Court acknowledged that, "'[w]e made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons,'" and "repeat[ed] those assurances." 561 U.S. 742, 785, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010) (plurality opinion) (citation omitted) (quoting *Heller*, 554 U.S. at 626-627).

Later, in *New York State Rifle*, the Court considered a licensing scheme regarding the right to carry handguns in public for self-defense. 597 U.S. at 11. Division One concluded that

13

the Supreme Court continued to affirm the longstanding restrictions on possession of firearms by

felons, stating:

> Relevant here, *N.Y. State Rifle* did not overrule, or cast doubt on, the Court's recognition in *Heller* and *McDonald* that the Second Amendment did not preclude prohibitions on felons possessing firearms. The six-justice majority opinion fully embraced the earlier decisions in *Heller* and *McDonald* that the Second and Fourteenth Amendments protect the right of "ordinary, law-abiding citizens to possess a handgun in the home for self-defense." Indeed, at least 11 times the majority referenced the Second Amendment right of "law-abiding" citizens.

*Ross*, 28 Wn. App. 2d at 649 (emphasis omitted) (citation omitted). Thus, Division One held

that "consistent with *Heller*, *McDonald*, and *New York State Rifle*, the Second Amendment does

not bar the State from prohibiting the possession of firearms by felons." *Id.* at 651.

Peterson acknowledges *Ross* but nonetheless asks this court to not adhere to it. He

asserts that *Ross's* "reliance on *Heller's* dicta was misplaced" and more specifically, that

*Heller's* "reference to 'longstanding prohibitions on the possession of firearms by felons' can

only mean prohibitions in existence at the time of the founding." Br. of Appellant at 32, 33.

Peterson's assertion is premised on his assumption that *Heller* and *New York State Rifle* are

somehow inconsistent with each other. But as the court in *Ross* concluded, *New York State Rifle*

"did not overrule, or cast doubt on, the Court's recognition in *Heller* . . . that the Second

Amendment did not preclude prohibitions on felons possessing firearms." *Ross*, 28 Wn. App. 2d

at 649. Indeed, *New York State Rifle* made the constitutional standard endorsed in *Heller* "more

explicit" and then applied that standard. *New York State Rifle*, 597 U.S. at 31.

Most recently, we examined the constitutionality of firearm restrictions on felons in

*Bonaparte*, where the defendant argued that the State must prove a "historical tradition of

depriving a person of the right to possess a firearm based on a prior conviction for assault in the

14

first degree" for such restrictions to be constitutional under the Second Amendment. 32 Wn. App. 2d at 271 (internal quotation marks omitted).

We examined *Heller*, *McDonald*, and *New York State Rifle*, before considering *United States v. Rahimi*,[7] a Second Amendment decision by the United States Supreme Court. *Bonaparte*, 32 Wn. App. 2d at 271-74. In *Rahimi*, the Supreme Court analyzed a federal statute that prohibits the restrained party under a domestic violence restraining order from possessing a firearm. 144 S. Ct. at 1894. Despite the difference in context, a restraining order versus a felony conviction, *Rahimi* affirmed that restrictions on the possession of firearms by felons are presumptively lawful. *Id.* at 1902.

Indeed, *Bonaparte* highlighted the Supreme Court's "repeated articulation that prohibitions on the possession of firearms by felons are presumptively lawful or more general language that the Second Amendment right to keep and bear arms is 'not unlimited.'" 32 Wn. App. 2d at 278 (quoting *Heller*, 554 U.S. at 595). Among other things, we held that "the framework articulated in *New York State Rifle* of the government's need to demonstrate that a firearm restriction is 'consistent with this Nation's historical tradition' applies to restrictions on a *law-abiding citizen's right to bear arms*" and was not applicable to Bonaparte's case because he had previously been convicted of a felony. *Id.* at 276 (emphasis added). Likewise, here, Peterson is a convicted felon, so the "historical tradition" framework articulated in *New York State Rifle* does not apply to his challenge. Therefore, we hold that Peterson's as-applied challenge to Washington's unlawful possession of a firearm statute fails.

---

[7] 602 U.S. 680, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024).

CONCLUSION

We hold that (1) sufficient evidence exists that Peterson possessed the rifle, (2) sufficient evidence exists that Peterson committed the four counts of unlawful possession of a controlled substance with intent to deliver while armed with a firearm, and (3) Peterson's as-applied challenge to Washington's unlawful possession of a firearm statute fails.

Accordingly, we affirm Peterson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Cruser, C.J.